HUGH CAMPBELL *vs.* CITY OF STILLWATER.

July 18, 1884.

**Municipal Corporation—Streets—Use by Railroad Company.**—A municipal corporation is not relieved of the care and responsibility for the condition of one of its streets, merely by permitting a railway company to lay out and operate its track upon and along it.

**Same—Personal Injury—Proximate Cause.**—Where several concurring acts or conditions of things, one of them a wrongful act or omission, produce an injury, such wrongful act or omission is to be regarded the proximate cause of the injury, if the injury be one which might reasonably be anticipated from the act or omission, and which would not have occurred without it.

Appeal by plaintiff from an order of the district court for Washington county, *McCluer*, J., presiding, sustaining a demurrer to the complaint.

*J. N. & I. W. Castle*, for appellant.

*A. E. Macartney,* for respondent.

GILFILLAN, C. J. According to the complaint, the railway company, with the consent and permission of the defendant, laid its track and operated its railroad along-side of and in places lengthwise upon one of the streets of the city. The track was so constructed that a carriage driven even with care on or over it would be in great danger of being overturned and broken. Without reference to the danger from passing cars and engines, it was a dangerous place for a horse with a carriage to go. There was no fence or barrier of any kind between the part of the street occupied by the track and the part not occupied by it, to prevent horses running over to and upon the track. As the plaintiff, in his buggy, was driving his horse along the street near the said part of it, his horse was suddenly frightened by a car moving along the track, and, notwithstanding the efforts of plaintiff to prevent him, ran upon the track where it was laid on and along the street, overturned the buggy, and injured plaintiff.

The court below bases its decision sustaining a demurrer to the complaint upon two grounds, the first being in substance and effect this: that the portion of the street upon which the track was laid was practically vacated, and so removed from the care, control, and supervision of the city, by the permission given to the railway company to lay the track upon it; the court apparently assuming that the permission given had the same effect as to the use and control of the street as would its appropriation by the company under condemnation proceedings. To support this proposition, reference is made to Gen. St. 1878, *c.* 34, § 47, which authorizes a city or other municipal corporation and a railroad company to agree upon the manner and terms and conditions upon which the latter may use a street or part of a street when it becomes necessary to so use it. It may be conceded that this will authorize an agreement that will practically vacate the street or part of the street to be so used, and cast on the company the exclusive care and control thereof, relieving the city from all responsibility therefor. It is also possible, though the case does not call for a decision on it, that they may so agree as to devolve on the company the exclusive duty of protecting the public in the use of that part of the street not devoted to the use of the com-

pany from the dangers that it may become subject to by reason of a part of it being used for railroad purposes. Thus, in this case, the track is laid upon and along the east side of the street for a distance of 300 yards. On the west side there is, because of a high bluff and houses, no way to turn off from it. Horses are liable to become frightened and unmanageable by the moving of engines and cars along the track. That part of the street is thereby rendered dangerous, one of the most obvious dangers being—in the absence of any fence or barrier along the track to prevent it—that, when frightened and unmanageable, a horse will run upon the track, and, by reason of its condition, overturn and break the vehicle, and injure those who may be in it. Perhaps, but we do not decide it, the statute may authorize such an agreement as shall make it the duty of the company, instead of the city, to guard the part of the street reserved as a common highway against such dangers. Certainly, in the absence of any such authorized agreement, it is the duty of the city to use proper care to guard the street from dangers which exist by its own consent, and the omission of such care is negligence. In this case it does not appear that there was any agreement making it the duty of the company to protect the part of the street not surrendered to it, nor indeed that the manner of its use of the part surrendered was prescribed, or that any terms or conditions were imposed upon it. It appears only that the city consented to and permitted the use as a railroad of the part of the street on which the track is laid. If there be any agreement between the city and the company that affects the duty of the former in the care of the street, it must be made to appear by answer.

The other ground upon which the demurrer was sustained was that the frightening of the horse by the moving car, and not the neglect of the city to properly guard the street, was the proximate cause of the injury. In cases of tort the application in this court of the rule as to proximate cause is this: that where several concurring acts or conditions of things—one of them, the wrongful act or omission of the defendant—produce the injury, and it would not have been produced but for such wrongful act or omission, such act or omission is the proximate cause of the injury, if the injury be one which might rea-

sonably be anticipated as a natural consequence of the act or omission. In *McMahon* v. *Davidson,* 12 Minn. 232, (357,) it was stated as the rule that it is immaterial how many others may have been in fault, if the defendant's act or negligence was an efficient cause of the injury. In *Griggs* v. *Fleckenstein,* 14 Minn. 62, (81,) the defendant negligently left his horses unhitched in a city street, and they ran away, came into collision with and frightened another team properly hitched, which also ran away, and came into collision with and injured plaintiff's horse. The court held that defendant's negligence in leaving his horses unhitched was the cause of the injury, saying: "The running away of the defendant's team was the efficient cause of the injury to plaintiff's horse, because it put in operation the force which was the immediate and direct cause of the injury." In *Johnson* v. *Chicago, M. & St. P. Ry. Co.,* 31 Minn. 57, a fire, caused by a spark from defendant's engine, commenced in a pile of corn-stalks negligently left by N. near the track, passed from the corn-stalks to his barn, from his barn to another, and from that to plaintiff's. It was held that the negligence of the defendant in allowing the sparks to escape from the engine was a proximate cause of the injury to plaintiff. In *Nelson* v. *Chicago, M. & St. P. Ry. Co.,* 30 Minn. 74, which was an action for injuries caused by defendant's failure to fence its road, the rule was stated that "if the injury was one which a man of ordinary experience and sagacity could foresee might probably ensue from a failure to fence, then the damage would be sufficiently proximate and direct to entitle the injured party to recover." This was followed and applied in *Maher* v. *Winona & St. P. R. Co.,* 30 Minn. 401, in which it was held that the failure to fence the railroad might be the proximate cause of the injury, where the plaintiff's horses, which he was driving along the highway, were frightened by a train of cars passing, got beyond his control, got away from him, ran upon and along the track into a culvert, and one was killed and the other injured. This court sustained an instruction to the jury in the language which we have quoted from the *Nelson Case.*

There can be no question in this case but that any one of ordinary experience and sagacity could have foreseen, from the condition in which this street was put by the construction and operating of the

railroad track along on one side of it, that horses travelling along the remainder of the street might probably be frightened by passing cars, so as to get beyond the control of their driver; and if there was no fence or barrier to prevent, they might, probably, when so frightened, run upon the track, and injure the vehicle, or any one riding in it. Such an injury might reasonably be anticipated as a natural consequence, in the condition in which the track was, of the omission to place some barrier to prevent it.

Order reversed.