[No. 7555.]

WILLSON v. THE COLORADO & SOUTHERN RAILWAY COMPANY ET AL.

1. PLEADINGS—*Reply.* A reply which directs itself only to "all new matter in said answer contained", is vulnerable to a motion to make more specific; but if not so assailed it suffices to put in issue the affirmative averments of the answer. (313)

2. RAILROAD COMPANY—*Liable for Negligence of Lessee.* A railroad company which admits another to the joint use of its tracks is liable for the negligence of the one to which such permission is extended, in the operation of its trains thereon. (313, 314)

3. RECEIVER—*Negligence Not Chargeable to the Property Owner.* In the absence of a statute to the contrary a railway company is not liable for the negligence of a receiver in charge of its property. (314)

4. ——*Purchaser of Railroad Liable for Receiver's Negligence.* Mortgage Foreclosure Sale of a Railroad, the purchaser taking "subject

to the liabilities of a receiver incurred in operating" the mortgaged properties, is liable for the negligence of the receiver in permitting a car containing dynamite to be unnecessarily retained upon the tracks, in the vicinity of private dwellings; in failing to in any way advise the public of the explosives, even after a fire had broken out in such proximity thereto that an explosion might reasonably be anticipated; and in failing to remove the car, while, after the fire had broken out, such removal was practicable; and this, even though the liability of the receiver has never been judicially established. (315, 318)

5. NEGLIGENCE—*Common Carrier Transporting Explosives.* A common carrier may lawfully carry dynamite and like explosives, but may not expose persons to danger from an explosion, where this is not necessary for the proper performance of his duty as a carrier. A car containing dynamite, and loaded with other merchandise in such manner that the dynamite could not be removed without unloading the car, was unnecessarily left standing upon the tracks of a railway in the vicinity of occupied dwellings. It was not placarded with notice of its dangerous contents. A fire breaking out in the vicinity, those engaged in attempting to extinguish it were not warned of the presence of the explosives, nor was any attempt made to remove the car, though a half hour intervened before any explosion occurred. *Held* the receiver in charge of the railway might by the jury be declared negligent. (316)

6. —*Pleading.* The negligent leaving of a railway car containing high explosives in large quantities where human life may be endangered, is a nuisance. In an action for the death of one who, without fault on his part, was killed by the explosion of the contents of the car, it is not necessary to allege or prove the immediate cause of the explosion. (318)

7. ——*Negligence of Defendant Concurring with Wrongful Act of a Stranger.* Where injury occurs by the negligence of the receiver of a railway, and the wrongful act of another, for whose conduct neither the receiver nor the injured person is liable, the receiver is chargeable if the injury would not have occurred but for his negligence. (318)

8. EVIDENCE—*Competency.* Action for negligence in unnecessarily detaining at a railway station a car containing dynamite, consigned to another station; in not placarding the car with notice of its contents; not attempting to remove it after a fire had broken out in the vicinity; and in not notifying those engaged in attempting to suppress the fire of the dangerous contents of the car. An ordinance of the city regulating the storage of explosives is not admissible. (317)

9. PARTIES—*Defendants—Joint Torts.* Certain railway tracks of the Colorado & Southern Company were operated jointly by that company and the receiver of the Colorado & Northwestern Company. By the negligence of the receiver plaintiff's intestate came to his death.

The title of the Colorado & Northwestern Company was afterwards purchased by the D. B. & W. Co. at a sale made pursuant to the decree in a foreclosure suit in which the receiver was appointed, "subject to the liabilities of the receiver incurred in operating" etc. *Held* that the Colorado & Southern Company having admitted the receiver to a joint occupation of the tracks, with itself, it was liable for his neglect; that the D. B. & W. Co. was liable, by the terms of its purchase; that each being liable for the same event, they were properly united, and there was no misjoinder either of parties or causes of action. (318)

10. ——*Non-Suit as to One Defendant—Effect.* Several joined as defendants in an action for a tort. Non-suit as to one does not determine the cause as to the others. (319)

*Error to Boulder District Court.*—Hon. JAMES E. GARRIGUES, Judge.

Mr. F. G. FOLSOM and Mr. H. E. ROWLAND, for plaintiff in error.

Mr. E. E. WHITTED, Mr. R. H. WIDDICOMBE and Mr. J. M. CATES, for defendants in error.

July 28th, 1909, plaintiff in error brought an action against defendants in error to recover damages for the death of her husband, which occurred in the City of Boulder August 10th, 1907. For convenience the Colorado and Southern Railway Company will be referred to as the C. & S., the Colorado and Northwestern Railroad Company as the C. & N., and the Denver, Boulder and Western Railroad Company as the D. B. & W.

The complaint charged that the C. & S. and the C. & N., through its receiver, owned and operated certain railroad tracks in the City of Boulder on or about August 8th, 1907; that on March 29, 1909, the property of the C. & N. was sold under foreclosure proceedings and was thereafter conveyed to the D. B. & W. subject to the liabilities of the receiver incurred in operating the mortgaged property, and that on the 13th day of July following the receiver was discharged; that the C. & S. and C. & N. used the same tracks, freight yards and

freight stations at Boulder by virtue of a lease from the
C. & S. to the C. N., whereby the former leased to the
latter terminal facilities in the City of Boulder under
which the C. & S. handled all the business of the two
roads at that point. It then alleged that about March
4th, 1889, the City of Boulder passed an ordinance which
provided in substance that no person should keep, at any
one time, gun, blasting, or giant powder, dynamite, or
other explosives of similar nature, at his place of busi-
ness or elsewhere in the City of Boulder, in a greater
quantity than 100 pounds, and that when exceeding one
pound in quantity, should be kept in closed receptacles,
each of which should contain not more than fifty pounds,
and kept at a safe distance from fires, and in a situation
from which it could be easily removed in case of fire,
and that such explosives when kept in quantities ex-
ceeding ten pounds at places of business, should be con-
tained in magazines placed upon trucks with handles, so
that the same could be easily moved, and that when such
places were closed at night such magazines should be
placed near the front entrance, so as to be readily moved
in case of fire. It was further alleged that on August 8,
1907, there existed an agreement between the City and
the C. & S. and C. & N., under which these companies
agreed to keep all explosives in course of transportation
at a place on a side track west of 4th street; that some-
time prior to this date a shipment of dynamite came into
the freight yards of these companies, out of which 2,000
pounds, packed in forty separate boxes, consigned to
the Boulder County Mine at Cardinal, were transferred,
with their knowledge, and under the supervision of their
employes into a car belonging to the C. & N., standing
on a side track at 10th and Water streets, in the freight
yards of these railroad companies; that this track was
located near a freight shed; that the platforms about
this shed were saturated with oil; that a large shipment
of oil was on the platform; that there were accumula-
tions of waste paper and other inflammable material
about the station and platform, which were in danger

of being ignited by sparks from locomotives;—all of which was known to these defendants; that four other cars were run in on the side track in such manner that the car in which the dynamite was stored could not be removed without removing these cars; that the dynamite was placed in the end farthest removed from the door of the car, and the car filled with other merchandise in such manner that the dynamite could not be removed without unloading the other articles; that the car containing the dynamite was not placarded with any sign giving notice that it contained an explosive, and was left standing on the side track from the time it was loaded until it was destroyed by fire on the morning of August 10, 1907; that there was a strike of the employes of the C. & S. at the time; that these employes were threatening violence to the railroad property; that this was known to the C. & S. and C. & N. companies; that a watchman was not provided, and that the dynamite was loaded for transportation in time to have been transported by a freight train which left the afternoon of August 8th for Cardinal, but that the car containing it was permitted to remain where loaded, until destroyed by fire the second day thereafter. It was then alleged that fire broke out in the freight yards on August 10th; that no warning was given by either the C. & S. or C. & N. that the car was loaded with dynamite, and no attempt was made to remove it from the vicinity of the fire, or protect the firemen, or people congregating near the fire, from the danger of an explosion; that the chief of the fire department called for volunteers to aid in extinguishing the fire, and that the husband of plaintiff was near the car, engaged as a volunteer in attempting to extinguish it; that he was conducting himself in a reasonably prudent manner, and was ignorant of the fact that the car contained dynamite; that the fire was communicated to the car, causing an explosion which so injured the husband of plaintiff that he died the next day. A general demurrer to this complaint was filed by each of the defendants, and overruled.

The C. & N. answered in substance that its property was in the hands of a receiver who had exclusive charge of it at the time the powder was placed in the car, and at the time of the explosion, and put in issue all the allegations of the complaint.

The C. & S. company answered by pleading section two of the ordinance set out in the plaintiff's complaint, which provided that:

"No persons shall carry any such powder or other explosive on any vehicle in any part of the city, unless the same shall be secured in kegs, boxes or canisters, sufficiently close to prevent the grains thereof from falling out."

It admitted that the shipment of dynamite was brought into the freight yards at Boulder on August 8, 1907, but not by it, and that certain packages were transferred to a car belonging to the C. & N. standing on the track belonging to the C. & S., near 10th and Water streets, but denied that such transfer was made under the supervision of its agents. It admitted the location of the car with reference to the freight shed and platform; that it used this shed and platform; that the side track was close thereto;—but denied that such shed and platform were saturated with oil, or that there was any accumulation of waste paper or other combustible material on or about the platform. It further admitted the car could not be removed without moving other cars upon the same track, but alleged that these cars were not placed on the track by it, or any of its agents. It also admitted that at the time of the explosion some of its employes were on a strike, but denied that they were threatening violence or destruction of its property, and admitted a fire broke out on the morning of August 10th, and that this fire caused the powder to explode. All the other allegations of the complaint were put in issue by the answer. For second answer it pleaded that the fire which caused the explosion was started by the malicious and criminal act of incendiaries, who set fire to cars near the freight station, and that this fire was communicated to the car in which the powder was stored.

The D. B. & W. answered that it purchased the property of the C. & N. in the month of March, 1909, and pleaded provisions of the decree of sale under which it purchased the property, from which it appears that it assumed the liabilities of the receiver, substantially as stated in plaintiff's complaint, and alleged that at no time prior or subsequent to the decree of foreclosure, had any liability against the receiver of the C. & N. been adjudged or decreed in any court, concerning any matter set forth in the plaintiff's complaint.    For second defense it pleaded that there was no allegation in the complaint that any negligent act on the part of the receiver caused or contributed to the explosion.    For third defense it pleaded in substance the same as set forth in the second defense of the C. & S.

The plaintiff filed a replication to the answer of the C. & N. denying,

"Each and every allegation of new matter in said answer contained."

By way of replication to the answer of the C. & S. she denied,

"Each and every allegation of new matter in said answer contained, except such matters as are hereinafter specifically admitted."

The admission related to section two of the ordinance pleaded in the answer.    The replication to the answer of the D. B. & W. was similar, and, with the exception of denying the affirmative defenses, admitted the other averments of the answer and alleged that the deed conveying the property to the D. B. & W. contained the provisions pleaded in her complaint.

At the trial the defendant companies objected to the introduction of any evidence, and moved the court to dismiss the case, because the complaint did not state facts sufficient to constitute a cause of action; that the action is in tort against defendants jointly, while the allegations are both joint and several; because the origin of the fire is not alleged in the complaint; that no joint action can be sustained against defendants on the sep-

arate and independent acts of negligence alleged; and, for the reason, that if the defendants are liable at all, they are severally and not jointly liable. This motion was overruled.

Plaintiff offered in evidence the ordinance pleaded, —which was refused. The testimony introduced on her behalf in chief established that a car of dynamite was hauled into Boulder by the U. P. company on the morning of the 8th of August, 1907. The powder was consigned to a Boulder merchant who placed forty cases, of fifty pounds each, in a car belonging to the C. & N. These cases were consigned to a party at Cardinal, a station on the C. & N. The C. & N. is a narrow gauge and the C. & S. at Boulder a standard gauge. The C. & N. extends in a westerly direction from Boulder and the track upon which the car of the C. & N. stood belonged to the C. & S., a third rail having been placed by the latter upon which to run narrow gauge cars, under a traffic arrangement between the companies which was for their mutual benefit in transporting passengers and freight between Denver and Boulder and points beyond in the mountains to the west, on the line of the C. & N. By this agreement the C. & N. were to pay the C. & S. $75.00 per month for the use of its track and station at Boulder. The receiver adopted this contract under authority of the court appointing him. The use of these tracks was not exclusive by either but, on the contrary, it appears that they were used jointly as the transaction of business might require. The C. & S. and the receiver of the C. & N. had a joint agent who had general charge of the business of both at Boulder. The employes of the C. & S. handled the freight for both roads. The foreman of the freight yard was an employe of the C. & S. He had control of the disposition of freight cars in and around the station. Shortly after the powder had been placed in the car a freight train departed for Cardinal, but the merchandise car of that train was full, and the car containing the powder was left standing on the track, in order to load it with other

merchandise. The train over the C. & N. next day carried passenger coaches and for this reason the car in which the powder was loaded was not attached. The car was under the control of the employes of the C. & S. who assisted in placing other merchandise in it. The powder was so placed in the car in connection with other merchandise that the latter articles would have to be removed before the powder could be reached. In the immediate vicinity of where the car stood a number of residences are located, in fact, it appears to be quite a thickly populated part of the city. The car containing the powder was not placarded or marked in any manner, to indicate that it contained an explosive. About midnight of August 9th or shortly thereafter on August 10th, fire originated in the freight yard, which was communicated to the car containing the powder,—and caused the explosion. The fire department of Boulder at that time was endeavoring to extinguish the fire. No warning was given that the car contained powder, although the fire had been burning fully half an hour before the explosion occurred; neither was any effort made to remove the car. Plaintiff's husband was assisting the department, and was killed by the explosion. At the time the powder was loaded on the car, and also at the time of the fire, the C. & N. was in the hands of a receiver, who was subsequently discharged by order of the court appointing him, and prior to the time the suit was brought by plaintiff. The property of the C. & N. was sold, by order of court appointing the receiver, to the D. B. & W. Under the deed conveying the property the vendee assumed all the liabilities of the receiver incurred in his capacity as such, while in control of the C. & N. property.

At the close of the testimony on behalf of plaintiff, in chief, the defendants moved the court for judgment of non-suit,—which was sustained as to the C. & S. and C. & N. and overruled as to the D. B. & W. Testimony was then introduced on behalf of the D. B. & W. which established that the fire was started in the freight yard

by incendiaries. At the close of all the testimony the D. B. & W. moved that the jury be instructed to return a verdict for the defendant, based upon the ground that the fire was caused by the acts of incendiaries, for which it was not responsible; that the fire was not the result of its negligence; that no negligence which was the proximate cause of the explosion had been shown by the evidence; that it appeared the fire was brought about by independent intervening human agencies, against which acts the defendant could not be held responsible; that the action is joint against three defendants and the evidence shows, if it shows negligence at all, that the negligent acts were separate and distinct, and in no wise connected with each other and that the evidence failed to sustain the allegations of the complaint of a joint tort. This motion was granted and a verdict rendered and judgment accordingly.

The assignments of error on behalf of plaintiff are substantially embraced in the propositions urged upon our attention, that the court erred in refusing to admit in evidence the ordinance regarding explosives, in granting the motion of the C. & S. and C. & N. for nonsuit, and in directing a verdict in favor of the D. B. & W.

As cross-errors the defendants assign the following: (1) That the court erred in its refusal to sustain the demurrers to the complaint, based upon its failure to state a cause of action and upon the ground of misjoinder of parties. (2) That the court erred in its refusal to direct a judgment for defendants on the pleadings, and its refusal to sustain their motion to dismiss the case.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The motion of the C. & S. and D. B. & W. for judgment on the pleadings, or more properly speaking, as the record shows, for judgment by default for want of a reply, was based upon the ground that the respective replications of plaintiff, to the effect that all new mat-

ter in the answers of these defendants was denied, did not put in issue the affirmative defenses so pleaded. Such a denial is poor pleading and vulnerable to a motion to make more specific,—but as the replications were not so assailed they were sufficient to put in issue the affirmative averments of the respective answers to which they were directed.—*Highlands v. Raine,* 23 Colo. 295, 47 Pac. 283; *City of Crete v. Hendricks,* 2 Neb. Vnof. 847, 90 N. W. 215.

The remaining errors assigned by defendants raise the questions of the sufficiency of the complaint and misjoinder of parties. To some extent at least these questions are involved in those urged by plaintiff, and we will next consider the rulings of the court in sustaining the motions for non-suit as to the C. & S. and C. & N. and directing the verdict in favor of the D. B. & W.

The C. & S. and C. & N. had an arrangement whereby the latter was permitted to use the tracks and station of the former in Boulder. The powder had been placed in a car of the C. & N. and whether the motion for non-suit interposed on behalf of the C. & S. was properly sustained depends upon whether it was liable for the alleged negligence of the receiver of the C. & N. who, under the direction of the court appointing him, adopted this arrangement or contract. The contract was one for the joint use of the road-bed, track and station at the point where the explosion occurred. This property belonged to the C. & S. The companies had a joint agent at Boulder. He had charge of the men who handled the freight at the depot for both roads. The C. & S. employes handled the freight for the C. & N., and the foreman of the yards, who was an employe of the C. & S., had control of the disposition of the cars in and around the station;—so that it appears the C. & S. controlled the tracks and station at the yards and that the C. & N. used these tracks jointly with the C. & S. with its consent, for which, and the handling of freight, it paid the C. & S. company a monthly rental. A railroad company which permits another to make a joint

use of its track is liable for the negligence of the company to which the permission is granted.—*St. Louis I. M. & S. Ry. Co. v. Chappell,* 83 Ark. 94, 102 S. W. 893, 10 L. R. A. (N. S.) 1175; *R. R. Co. v. Barron,* 5 Wall. 90, 18 L. Ed. 591; *Sanders v. Penn. R. Co.,* 225 Pa. 105, 73 Atl. 1010, 133 Am. St. Rep. 857; *O'Bannion's Adm'r v. So. Ry. Co.* (Ky.) 110 S. W. 329; *Penn. R. Co. v. Ellett,* 132 Ill. 654, 4 N. E. 559; *C. & E. R. Co. v. Meech,* 163 Ill. 305, 45 N. E. 290; *Central Ry. Co. v. Wood,* 129 Ala. 483, 29 South. 775.

We think the authorities are substantially unanimous on this proposition; the reason for the rule being that a railroad company owes the public certain duties and that it can not by its own act, without the consent of the legislature, absolve itself from its public obligations. It is true that in this state a railroad company is authorized to lease its property to another company under certain circumstances and if the arrangement or contract in question had given the receiver of the C. & N. the exclusive control and possession of the tracks and station where the explosion occurred, it is possible that the C. & S. would not be liable for the tortious or negligent act of the receiver,—but that is not this case.

The C. & N. at the time the powder was loaded in the car, and at the time of the explosion, was in the hands of a receiver who had the exclusive control of its property and the operation of the road. The receiver's possession was not the possession of the corporation; the latter could not control either the receiver or his employes. The receiver was not the agent of the C. & N., and although it owned, or had some interest in, the property of which he had charge, it had no voice in its management, and could not select or control the employes who operated its road, or the property which it had leased from the C. & S., consequently in the absence of a statute imposing liability, it is not responsible for the torts of the receiver or his employes.—*Kansas Pac. Ry Co. v. Searle,* 11 Colo. 1, 16 Pac. 328; *Ohio & M. R. Co.*

*v. Davis*, 23 Ind. 553, 85 Am. Dec. 477; *Chamberlain v. New York, L. E. & W. R. Co.* (C. C.) 71 Fed. 636; *Memphis & C. R. Co. v. Hoechmer*, 67 Fed. 456, 14 C. C. A. 469; *Schurr v. Omaha & St. L. Ry. Co.*, 98 Iowa, 418 67 N. W. 280; *Gableman v. Peoria, D. & E. Ry. Co.* (C. C.) 82 Fed. 790; *State v. Wabash Ry. Co.*, 115 Ind. 466, 17 N. E. 909, 1 L. R. A. 179; High on Receivers (4th Ed.) § 396; *Godfrey v. Ohio & M. Ry. Co.*, 116 Ind. 30, 18 N. E. 61; *Archambeau v. New York & N. E. R. Co.*, 170 Mass. 272, 49 N. E. 435. There are some exceptions to this rule but the facts here do not bring the cause within the exceptions. From the averments of the complaint it appears that the negligence charged, for which it sought to hold the C. & N. responsible, was the acts of the receiver and, for the reasons above given, its demurrer challenging the sufficiency of the complaint should have been sustained.

In considering the ruling of the court in directing a verdict for the D. B. & W. three questions are presented: (1) The sufficiency of the testimony to establish negligence of the receiver. (2) Whether the fire, started by incendiaries, was the proximate cause of the death of plaintiff's husband, and, (3) If not, can the D. B. & W. be held for the negligence of the receiver in this action?

The evidence establishes that the car containing the powder was loaded with other merchandise and left standing at the freight station, which was located in the near vicinity of many occupied dwellings; that the car was not placarded with notice of its dangerous contents; that those engaged in endeavoring to extinguish the fire were not warned that the car contained an explosive, although the fire had been burning for fully one-half hour before the explosion occurred. Neither was any effort made to remove the car. It also appears that the powder was loaded in ample time for the car containing it to have been taken out on the train which left on the afternoon of August 8th, but was held on the track in order that enough freight might be accumulated

to fill the car. Does this state of facts, tend to establish negligence? The keeping of explosives in large quantities in close proximity to occupied dwellings is a menace to life, and whether keeping it in a car in which it is loaded for transportation by a common carrier constitutes actionable negligence must depend more or less upon the facts of each case where such action is called in question. The law considers explosives dangerous and requires that those engaged in transporting them should exercise that degree of care to prevent injuries to others therefrom as ordinarily prudent persons, considering their dangerous character, would exercise in similar circumstances, and a failure to do so is negligence.—*Derry Coal and Coke Co. v. Kerbaugh,* 222 Pa. 448, 71 Atl. 915; *Henry v. Cleveland C. C. & St. L. R. Co.,* (C. C.) 67 Fed. 426. A common carrier has the right to transport powder, but this does not include the right to subject persons to danger from its explosion in a greater degree than is reasonably necessary for the proper performance of its duty as a carrier.—*Ft. Worth and Denver City R. Co. v. Beauchamp,* 58 L. R. A. 716. Applying these principles we think there was sufficient testimony to justify the submission of the question of negligence to the jury. The car was left in the near vicinity of occupied dwellings. There is no doubt regarding the dangerous character of dynamite. The car containing it could have been sent out before it was entirely filled with other merchandise. If fire was communicated to the powder it was liable to explode. It was in sufficient quantity to cause the death of persons near by if it exploded. After the car was filled with merchandise and ready for shipment it was still left where, if the powder it contained exploded, it might cause the loss of human life. It was not placarded so as to give notice to any one of its dangerous contents. The fire had been under headway for a considerable period of time, and yet no employe of the receiver notified those engaged in extinguishing the fire that the car contained powder; nor made any effort to remove it. Un-

doubtedly the car, after being loaded, could have been moved to some point where danger from fire would not have been so great as where it stood, or in case fire was communicated to it and an explosion occurred, it would not likely have caused the death of any person. We think all these matters were proper for a jury to consider in determining whether negligence was established, and not a question for the court.

In this connection we will consider the ruling of the court in declining to admit in evidence the ordinance of the City of Boulder as pleaded in the complaint. No doubt a common carrier may be guilty of negligence by violating this ordinance, but in the circumstances of this case we think it was not admissible. The receiver was engaged in transporting the powder. It was loaded into a car for that purpose, and the negligence, if any, consisted not in storing it, but in the failure to take that degree of care, after it was placed in the car, to prevent injury to others which an ordinarily prudent person, taking into consideration its dangerous character, would exercise under similar circumstances. Nor was the section of the ordinance pleaded by defendants admissible. They were not charged with negligence as a result of failing to comply with its provisions.

If a jury should determine that the receiver was guilty of negligence, would the fact that the fire was started by an incendiary excuse such negligence? Where there are several agencies or causes of an injury the question is which was the efficient, dominating cause and in determining this question the rule is, if the jury should find the receiver was guilty of negligence, that where the injury is the result of the combined negligence of a defendant, and the wrongful act of a third party for whose act neither the injured party nor the defendant is responsible the latter is liable when the injury would not have occurred except for his negligence.— *Colo. Mort. & Inv. Co. v. Rees,* 21 Colo. 435, 42 Pac. 42; *Carlock v. D. & R. G. Co.,* 55 Colo. 146, 133 Pac. 1103; *Tanner v. Harper,* 32 Colo. 156, 75 Pac. 404; *Colo. Mort.*

*& Inv. Co. v. Giacomini*, 55 Col. 538, 540, 136 Pac. 1039; *Byron Tel. Co. v. Sheets*, 122 Ill. App. 6; *Johnson v. Northwestern Tel. Exch. Co.*, 48 Minn. 433, 551 N. W. 225.

If it should be determined that the receiver was guilty of negligence there is an additional reason, although along the same line, why the origin of the fire would not be a defense. A common carrier has the right to transport explosives,—but a nuisance may result from a negligent exercise of this right. Endangering life by leaving a car containing a high explosive in large quantities in a location in circumstances which would constitute negligence constitutes a nuisance. In such case it is not necessary to either plead or prove the immediate cause of an explosion of the powder so kept, for the reason that the original and primary cause of an injury resulting from such explosion is the establishment of a nuisance.—*Heeg v. Licht*, 80 N. Y. 579, 36 Am. Rep. 654; *Chicago W. & V. Co. v. Glass*, 34 Ill. App. 364; *Myers v. Malcolm*, 6 Hill. 292, 41 Am. Dec. 744.

There can be no doubt regarding the liability of the D. B. & W. for the tort of the receiver if such tort is established, because, by the terms of its purchase of the property of the C. & N., it assumed this liability. This agreement was for the benefit of those having a claim against the receiver, of which plaintiff is one.—*Knott v. D. & S. C. Ry. Co.*, 84 Iowa 462, 51 N. W. 57. The only question is whether it can be joined as a defendant in this action. Counsel for defendants claim that it can not be, for the reason that the action against its co-defendants was one in tort, while that against it is in contract. The cause of action against each defendant is the alleged tort of the receiver, and its liability therefor. Hence the fact that one may be liable as a wrong-doer, and the other, because it assumed liability therefor, does not make a case of either misjoinder of parties or causes of action, because in such circumstances each is liable

for the same tort.—*D. & R. G. Co. v. Gunning,* 33 Colo. 280, 80 Pac. 627.

It is urged on behalf of the defendants that because the non-suit against the C. & N. was properly sustained that the action for this reason must also fail as against the other defendants. In an action against several defendants based upon a joint tort the rule is that the plaintiff will be permitted to recover against such of the defendants as his testimony establishes were guilty of the tort charged and the fact that one may be acquitted does not defeat his action as against those found guilty of the tort.—*Denver Omnibus and Cab Co. v. Gast,* 54 Colo. 17, 80 Pac. 727.

The judgment of the district court granting a non-suit against the C. & S. and directing a verdict in favor of the D. B. & W. is reversed, and the cause is remanded for a new trial as to these defendants. In discussing the case we must not be understood as having indicated that actionable negligence was established by the testimony, but that we have only held that from the testimony on the subject the question should have been submitted to the jury.

*Judgment affirmed in part and reversed in part and cause remanded for a new trial.*

Chief Justice Musser and Mr. Justice Hill concur.

*On Petition for Rehearing.*

Mr. Justice Gabbert delivered the opinion of the court:

On petition for rehearing it is claimed that we were in error in assuming that there was a joint use of the track by the lessor and lessee. We think not. There is testimony to establish that the terminal facilities, which include the leased portion of the track, were used jointly by the three companies; that Mr. Watrous was the joint

agent of the C. & S. and C. & N. W. and employed the men who handled the freight for all the roads. The C. & S. handled the freight for both roads, and its foreman of the yards had the disposition, placing and control of the freight cars in and around the station.

We were in error however, in stating that the Denver, Boulder & Western Railroad Company, by the terms of its purchase of the property of the Northwestern Company, assumed liability for the torts of the receiver, when we should have said the company took the property subject to any liability incurred by the receiver. But this does not make any difference with respect to the company being a party, as its property could not be subjected to the payment of any claim growing out of the liability of the receiver until it had an opportunity to defend an action to establish such liability.

*Petition for rehearing is denied.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.

Decided April 6, A. D. 1914: Rehearing denied July 8, A. D. 1914.