No. 18,959.

Sarah M. Moore, et al. *v.* Standard Paint
& Glass Co., et al.
(358 P. [2d] 33)

Decided December 23, 1960.

Mr. ALDEN T. HILL, Mr. RALPH H. COYTE, for plaintiffs in error.

Messrs. PHELPS, FONDA & HAYS, for defendant in error Standard Paint & Glass Co. of Pueblo.

Messrs. PETERSEN, EVENSEN AND EVANS, for defendant in error Parkrite Denver Co., Ltd.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of the Court.

THE parties will be referred to as they appeared in the trial court or by name.

On August 29, 1953, the Central Building in Pueblo, Colorado, was destroyed by fire. The same fire destroyed the adjoining building owned by Standard Paint and Glass Company. Shortly thereafter, Standard commenced to rebuild its building. In doing so, it lowered its former basement level, put in a reinforced wall between its basement and the hole in the ground that had once been the basement of the Central Building. The

owners of the property upon which the Central Building had been located did not reconstruct their building. Instead, they cleaned out the debris from the basement and entered into a lease with Parkrite under the terms of which Parkrite was to operate an automobile parking lot on the site for a period of ten years. As contemplated by the parties to the lease, Parkrite leveled and graveled the basement area, built a ramp from the street, and converted the former one-story basement into an open parking area, some nine feet below the street level. Subsequent to the leasing, Moore-Hughes purchased the Central property from the former owners.

On the night of October 7, 1957, a rain of cloudburst proportions fell in the area. The combined storm and sanitary sewers of the City of Pueblo were inadequate to carry off the rainwater, which collected in the streets, overflowed the curb, and flooded the leased substreet parking area, filling it to a level of some seven or eight feet along the wall of the Standard Paint building. This accumulation of water occurred during the night. At eight in the morning an employee of Standard Paint reported to work and found some three inches of water covering approximately fifty per cent of the floor of the basement in its building. This water did damage to Standard's merchandise stored there in the amount of $1075.50. After the storm Parkrite proceeded to have the water in its parking area pumped out as soon as possible.

Standard commenced the instant action against both the owner of the parking area and its lessee to recover damages allegedly caused by the water accumulation in its basement, urging that the water had come from the parking lot and that both were guilty of negligence and had committed a nuisance in the maintenance and operation of the parking lot below the surface of the street.

Moore-Hughes answered denying both negligence and nuisance, alleged an act of God and that the negligence was that of the City in maintaining an inadequate sewer

system. It also filed a cross complaint against Parkrite, asserting that under the terms of its lease with Parkrite it was entitled to judgment over in the event of any judgment against it.

Parkrite answered denying negligence and nuisance, alleging assumption of the risk and contributory negligence by Standard and further pleading act of God, failure to take steps to have the alleged nuisance abated, and denied responsibility on the ground that it had not changed the topography or physical condition of the property leased by it. It also denied each allegation of Moore-Hughes' counterclaim.

Trial was had to the court on the merits, culminating in an order dismissing the cross complaint of Moore-Hughes, dismissing Parkrite from the case, and entering judgment in favor of Standard against Moore-Hughes. In doing so, it based its determination upon the negligence of Moore-Hughes in permitting a large excavation directly adjacent to plaintiff's building to remain open for a period of over four years. Nuisance was not indicated as a basis of the court's decision, and we thus limit our discussion to an analysis of whether recovery may be permitted under the negligence theory.

Moore-Hughes, who sued out their writ of error in this court in 1959 to review the judgment of the trial court, urge two separate and distinct grounds for reversal: (1) that the proximate cause of the damage was not its negligence but rather the combination of an act of God and the inadequate storm sewers, and (2) that the court erred in dismissing its cross complaint against Parkrite.

A review of the record discloses sufficient evidence to support a determination that one of the causes of the damage to Standard was that water had seeped through the wall between the parking area and Standard's basement. The unrebutted testimony of one eye witness was that he had seen the water actually coming in. There was, however, in addition, testimony to the effect that

other basements in the area had been flooded by water backing up through the sewers. The record discloses sufficient evidence to support a conclusion that it was foreseeable that flooding of the parking area would occur if an especially heavy rain were to fall, since the excavation was in the lowest part of the city and prior flooding had occurred.

Since there is ample evidence in the record to support a conclusion that at least some of the flooding of plaintiff's basement occurred as a result of water flowing through the wall from the parking area, although it was impossible to prove that some of it did not in fact come in through backed up sewers, it thus becomes necessary to determine whether such evidence is adequate to support the finding of the trial court that the owners of the property were negligent in permitting such a large excavation directly adjacent to plaintiff's building to remain open for a period of over four years, and, if so, that such negligence was the proximate cause of plaintiff's injury.

The general duty of the owner or occupier of land to persons outside the premises is set forth in 2 *Harper and James; The Law of Torts* 1521, Sec. 27.19, as follows:

"The occupier of land generally owes a duty of reasonable care to prevent activities and conditions on his land from injuring persons or property outside his land, i.e., persons or personal property on public land or on other private land, or on navigable water or in the navigable air space; or other real property.

" * * *.

"To the general duty to use care there is one principal exception. According to the statements once widely made by commentators, the occupier's duty to prevent injury to persons or property outside his land from natural conditions on his own land is limited, if it exists at all. * * *. It would be consistent with such a rule however, to require *affirmative care with respect to the natural result of the occupier's alteration of his land, as*

*where he plants trees, or alters his land so that water is collected and discharged onto other land or the highway in unnatural quantities."* (Emphasis supplied.)

 Applying these rules to the instant case, we must hold that Moore-Hughes was under an affirmative duty not to permit its land to remain in an altered state if such altered state created a condition the natural and foreseeable result of which would result in injury to the adjoining property, and the breach of this duty constitutes actionable negligence.

It still must follow, however, that such negligence must be the proximate cause of plaintiff's injury. Such a determination must rest upon established precedent.

 In 1896 Colorado adopted the "but — for" test of proximate causation. Thus, in *Denver v. Johnson* (1896), 8 Colo. App. 384, 390, 46 Pac. 621, the court approved the language of *Campbell v. Stillwater,* 32 Minn. 308, which stated:

"In cases of tort the application of this court of the rule as the proximate cause is this: Where several concurring acts or conditions of things — one of them the wrongful act or omission of the defendant — produce the injury, and it would not have been produced but for such wrongful act or omission, such act or omission is the proximate cause of the injury, if the injury be one which might reasonably be anticipated as a natural consequence of the act or omission."

This rule was followed in *Willson v. Colorado & Southern Ry. Co.* (1914), 57 Colo. 303, 317, 142 Pac. 174. Thus, even if it were to be established that some of the water may have entered Standard's basement through its own sewer, such would not relieve defendants of liability. Cf. *Restatement Law of Torts,* Ch. 16, Sec. 432 (2).

It is readily apparent that if the owners of the parking lot had not permitted the dangerous condition to exist upon their property, and had taken active measures to prevent such an occurrence, at least some of the water

would not have entered the basement. This record discloses that defendants' negligence was a substantial factor in bringing about plaintiffs' damage.

█ Defendants further urge that the damage was created by an act of God, thereby relieving them from liability. This court has on at least three occasions ruled that one whose wrongful acts cooperate with an act of God is liable for injuries which are the natural result thereof, the defense of an act of God being available only to defendants who can prove that the injury resulted *solely* from the act of God without any contributory negligence on the part of the defendant. See *Barlow v. North Sterling Irrigation District* (1929), 85 Colo. 488, 277 Pac. 469, followed in *Maggard v. North Sterling Irrigation District* (1929), 85 Colo. 491, 277 Pac. 470; and *Ryan Gulch Reservoir Co. v. Swartz* (1928), 83 Colo. 225, 263 Pac. 728.

█ There being sufficient evidence in the record to support the conclusion that the owner of the land here involved knew or should have known that this was an area subject to flooding, and that during times of flooding it was reasonably foreseeable that injury could occur to adjacent property as a result of the maintaining of a dangerous man-made condition upon the land, there is no reason to interfere with the determination of the trial court that the negligence of the owner of the property was the proximate result of the injuries sustained. Compare *Denver v. Stanley Aviation Co.* (1960), 143 Colo. 182, 352 P. (2d) 291.

Defendants further urge that the trial court erred in not finding that the plaintiff had assumed the risk of the injury that occurred. This argument is based upon evidence to the effect that Standard replaced its building and constructed its basement while the open excavation existed on defendants' property, that it knew or should have known that this excavation was likely to flood, and that the injury here complained of would result. In so arguing, they point to evidence that Standard had

"waterproofed" the wall, and had put in a pump to drain such water as might collect in the basement. Although we do not pass upon the question of the validity of such argument, had the damage occurred shortly after the installation of these protective devices and before the owners of the adjoining property had had a reasonable opportunity to remedy the dangerous condition, we find it difficult to believe that any court could hold that Standard had assumed the risk that its neighbor would perpetuate a dangerous condition upon its property for a period in excess of four years. Such would indeed be an unreasonable and unwarranted extension of the doctrine of assumption of the risk.

The question next arises as to whether the landlord, Moore-Hughes, or the tenant, Parkrite, should be liable for the damages suffered. The general rule establishing the liability of the landlord in instances such as we have here is set forth by *Harper and James,* supra, at page 1528:

"Where the source of injury to a person or property outside is a condition of the premises existing at the time of the letting, the landlord is subject to liability if the condition is unreasonably dangerous and the landlord knew or should have known of the condition."

Thus we must hold that the landlord here was liable for the injuries suffered by its neighbor and the tenant is not liable over unless he has assumed the liability or breached his contract in regard to removal of the hazard.

In this connection Moore-Hughes asserts that the trial court erred in dismissing its counterclaim against Parkrite. In its cross claim, Moore-Hughes sought to enforce an indemnification provision in its lease with Parkrite. There are two pertinent lease provisions which show the intentions of the parties. They read:

"Lessee acknowledges that Lessee is familiar with the present condition of such premises and Lessee accepts the leased premises in their present condition, with the

right to alter same as above provided, and Lessor shall not be liable to Lessee, its employees and customers, nor the public for any defect in the leased premises, whether existing at the time of Lessee's acceptance of same or whether developing thereafter, nor for any injury or damage that may occur from the elements and Lessee will hold Lessor harmless from all liability or claims with respect to such defects or injuries.

"Lessee agrees to comply with all valid laws, ordinances, codes and regulations of any government authority having jurisdiction applicable to Lessee's occupancy or use of said premises, and Lessee covenants to hold Lessor harmless from any liability or claim growing out of the manner in which Lessee or Lessee's subtenants use or occupy said property."

In construing these provisions of the lease, the trial court found "That the plaintiff company had the status as owner of adjacent property, not that of an employee, customer or member of the public in general that might be upon the property and be injured, and that the contract between the Lessor and Lessee did not provide as to the plaintiff."

In so ruling, we believe that the trial court misconceived the comprehensive scope of the provisions of the lease. Nowhere is there a provision that the written terms are limited to persons "that might be upon the property." To the contrary, they indicate a clear understanding of the parties that some injury might occur to the public generally, which would include neighbors, as a result of the large hole that they were contemplating leaving in the ground, and that the lessor leased the property in such a state only upon the express agreement of the lessee that the latter would indemnify the lessor for any and all liability which it might incur as a result of the dangerous condition existing upon the property.

The judgment against Moore-Hughes is affirmed. Dismissal of the cross complaint against Parkrite is reversed

and the cause remanded to the trial court with directions to enter judgment over against Parkrite.

Mr. Justice Moore, Mr. Justice Knauss and Mr. Justice Day dissent.

Mr. Justice Knauss dissenting:

I must respectfully dissent. Research fails to disclose any case in point on the factual situation here presented.

In 56 Am. Jur. "Waters" §72, p. 558, it is stated with apparent authority: "It has frequently been stated that the right of an owner of land to occupy and improve it in such a manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that the alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface or *flowing onto it over the surface of adjacent lots* either to stand in unusual quantities on the other adjacent lands, or to pass into and over the same in greater quantities or in other directions that they were accustomed to flow."

Where a party grades his land in such a way that it is reasonable and not unexpected in a metropolitan area, no wrong is committed. *U.S. v. Shapiro,* 202 Fed. (2d) 459.

" * * * each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." *Armstrong v. Francis Corp.,* 20 N.J. 320, 120 A. (2d) 4. This rule in its application has the particular virtue of flexibility, each case presenting questions of fact as to the amount and character of harm caused, its foresee-

ability and the purpose and motive of the possessor in dispelling water from his property, as well as other relevant matters.

To find the defendants liable in the case before us it must be determined as a matter of law that the utilization of metropolitan land for below level parking is unusual, unexpected, unreasonable or negligent. With modern day urban parking problems, I cannot subscribe to a rule imposing liability on a property owner in the absence of some showing that he was bound to anticipate a devastating cloudburst at some indefinite time in the future, and that if it occurred, damage would result to plaintiffs as a natural consequence.

The majority opinion imposes a burden of foreseeability on defendants not imposed on the adjoining property owner who is similarly situated. In this case both buildings were completely destroyed by fire on August 29, 1953. Defendants removed the debris and entered into a lease in December 1953 with Parkrite to operate a parking lot thereon. Parkrite leveled the ground and graveled the area, built a ramp from the street and commenced operations. During this period Standard commenced reconstruction of its building, well-knowing that the basement area immediately adjoining its property existed, and was being made use of as a parking lot. In the rebuilding Standard excavated a full basement, lowered the level of its former *partial* basement to that of the parking lot, and attempted to waterproof the wall of its property facing the parking lot. At no time was any objection voiced by Standard, or warning given of probable danger or damage from operation of the parking lot until after the torrential cloudburst of October 7, 1957.

If, as the majority holds, the cloudburst, together with inadequate storm sewers and the consequent flooding of the parking area was foreseeable by defendant and Parkrite, it was equally foreseeable by Standard.

Most, if not all, of the buildings, including Standard's,

in the same area accumulated water in the basements due to water backing up from the inadequate storm sewer system. Standard had drains and a sump pump in its basement apparently installed to meet just such a contingency as occurred on the day of the cloudburst.

The record fails to disclose what proportion of the water in Standard's basement came from the parking lot through the wall and the amount which backed up in the sewer. Assuming that the act of omission of defendants and Parkrite in maintaining the parking lot as they did was a negligent act, it cannot be said that the injury "would not have been produced but for such wrongful act or omission." Indeed it may be that the injury was produced entirely by the inadequate sewer system. Both the trial court and this court must indulge in conjecture as to what actually caused the injury complained of. Certainly there is no evidence as to the amount of damage done by water which accumulated on the property of defendants.

The case of *San Joaquin Grocery Co. v. Trewhitt, et al.,* 80 Cal. A. 371, 252 Pac. 332, is somewhat analogous to the instant case. There water from four different sources accumulated on adjoining property. Water seeped into plaintiff's basement and damaged goods stored there. Plaintiff brought an action and was awarded damages by a jury. The judgment entered thereon was reversed for failure of proof that the damage incurred resulted from the water accumulated on adjoining land by defendants, the court concluding that the verdict was based on guess, conjecture or surmise.

In the instant case the proof offered required the trial court to guess or conjecture as to the extent of the injury from water which came through the wall of plaintiff's property. Tenuous inferences cannot take the place of proof of the fact.

Standard well knew when it rebuilt its structure that its property was situate in a low lying section of Pueblo; it attempted to waterproof its wall and installed drains

and a sump pump in its basement, apparently anticipating what finally happened.

The trickle of water which came through the wall of plaintiffs' property from the parking lot was inconsequential as compared to the amount deposited from the backing up of the storm sewer.

To hold defendants liable would mean that every time a building is burned or torn down the owner would have to bring in a mountain of dirt to fill the excavation, a thing which I do not believe in this day of offstreet parking the courts can or should legislate upon.

If the majority opinion is predicated on negligence, where is the evidence of negligence? I fail to find anything in the record which justifies the statement in the majority opinion that plaintiff in error allowed a "dangerous condition" to exist. Again, what authority can be cited to fix liability? Certainly none has been cited in the majority opinion. If the "But For" theory is applicable, it is just as logical to conclude that "But For" the action of Standard in *lowering and extending its original basement area* the damage complained of would not have occurred.

I, therefore, dissent.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur in this dissent.