No. 18,870.

LAWRENCE EDWARD ROBINSON, MINOR, ETC. *v.* EARL W. KERR, ET AL.
(355 P. [2d] 117)

Decided August 29, 1960.    Rehearing denied September 26, 1960.

Messrs. McLean & McLean, Mr. Earl J. Hower, for plaintiff in error.

Messrs. Yegge, Bates, Hall & Shulenburg, for defendant in error Earl W. Kerr.

Messrs. January, Gilchrist & Blunk, Messrs. Bardwell & Bardwell, for defendant in error Harris Park Lakeshore, Inc.

*In Department.*

Opinion by Mr. Justice Knauss.

In the trial court plaintiff in error was plaintiff, and defendants in error were defendants. We shall so refer to them.

Plaintiff, Lawrence Edward Robinson, a minor, was seven years of age when on April 7, 1956, he was kicked in the face by a horse named Smokey, causing the loss of his left eye.

Smokey was owned by the defendant Harris Park Lakeshore, Inc., and was allowed to roam at large by its owner. Harris Park Lakeshore had an arrangement with defendant Earl W. Kerr whereby Kerr would see that it had access to hay and feed during the winter period

when snow was on the ground. The corporation did not pay Kerr for this service, but he undertook to render it in repayment for favors previously extended to him.

The accident occurred on property owned by Mr. and Mrs. Shaffer, grandparents of the plaintiff, who had purchased one acre of land from Colorado Lakeshore, Inc., as a cabin-site. Shortly thereafter they erected a fence upon their property line as surveyed by the selling corporation. The fence consisted of from two to four strands of barbed-wire. The gate to the entrance of Shaffers' land consisted of one strand of the same wire. Access to the Shaffer land was over a small bridge located on a part of their property.

The Shaffers had left the "gate" open upon arriving at the cabin to spend the day on April 7, 1956. Plaintiff went outside to play while his grandmother prepared breakfast. His grandfather proceeded to the backyard to repair a well. The horse appears to have wandered into the Shaffer property and onto the bridge. The grandfather told Eddie to get the horse out of the front yard, whereupon Eddie walked toward the horse. As he neared the horse he shouted at it, whereupon the horse wheeled, lashed out with a rear hoof, striking the boy in the face, then ran across the bridge and off the property.

At the conclusion of plaintiffs' evidence defendant Harris Park Lakeshore, Inc., moved for a directed verdict on the ground that C.R.S. '53, 8-13-1, et seq., applied to the facts shown.

Defendant Kerr moved for a directed verdict on two grounds: (1) That C.R.S. '53, 8-13-1, et seq., precluded a recovery, and (2) that plaintiff had failed to prove that Kerr had such care, custody and control of Smokey as would impose liability upon him.

The trial court granted each of these motions and plaintiff brings the case here on writ of error.

Plaintiff bases his claim on the common law action of trespass quare clausum fregit.

As preliminary to a determination of the issues, it be-

comes necessary to consider the Colorado Fence statute as applied to the factual situation before us. This statute, as first enacted by the General Assembly in 1877, is in substance the same as now in force. It imposes a strict liability upon the owner of livestock for damage to grass, garden, vegetable products or other crops committed by trespassing livestock, provided the complainant carries the burden of proving that his crops had been enclosed by a fence sufficient by statutory standards to turn ordinary stock.

It is the contention of defendant Harris Park that no logical distinction exists as to the damages caused, whether to person or property, and that the statute applies in either case. Reading of the statute dispels this theory. *Morris v. Fraker,* 5 Colo. 425, cited by all the parties, has been followed consistently in this state and serves as a guide for crop owners and cattlemen, but it has no application in an action for personal injuries caused by livestock trespassing on the land of others. The act itself limits its application to "Damages for trespass and injury to grass, garden or vegetable products or crops." (C.R.S. '53, 8-13-2.)

Hence that plaintiff's fence had but one strand of wire in various sections is of no importance here except perhaps to indicate the property line of the grandparents' land, nor is failure to close the one-strand wire gate material.

Plaintiff contends that under the common law in force in Colorado (C.R.S. '53, 135-1-1) an owner or custodian of a horse is liable if the animal goes upon the land of another and inflicts personal injury upon one lawfully thereon.

Defendants contend that Colorado has never adopted the common law relative to animals running at large, but rather adopted the open range doctrine which required land owners, intent on preserving their property, to fence cattle out rather than requiring the owner of the animals to fence them in, and cite *Morris v. Fraker,*

supra, stating that it expressly upholds their contention. They follow this by stating that the fencing statute is declarative of the common law of this state since territorial days.

■ In answer to this contention it need only be said that Colorado in adopting the fence law, or as it sometimes is called — the open range law — modified the common law only to the extent embraced in the statute, which may not be enlarged by construction, nor its application extended beyond its specific terms.

"Statutes are not presumed to alter the common law otherwise than the act expressly provides." *In re Reynolds' Guardianship,* 60 Cal. App. 2nd 669, 141 P. (2d) 498.

The common law being the rule of decision in this state, it would seem to follow that the so-called "Fence Law" has no application to an action for personal injuries inflicted by trespassing animals. That act at most provides a defense to an owner of trespassing livestock in those circumstances where the claimant is unable to show that his land was enclosed by a fence of sufficient strength to turn ordinary cattle, and by its terms is limited to damages to grass, vegetables and other crops caused by the trespassing livestock.

It was agreed prior to trial that proof of the propensities of the horse Smokey, whether vicious or gentle, would be dispensed with. Counsel for the plaintiff states: "As far as we are concerned it was just a horse." This eliminates from the case any question of the character or habits of the horse which its owner knew, or should have known, aggravated the risk of permitting it to run at large, hence the right of the plaintiff to recover must rest upon the common law doctrine of trespass quare clausum fregit.

In *Walker v. Nickerson,* 291 Mass. 522, 197 N.E. 451, a cow trespassed in the garden of plaintiff, who went from her house to the garden to drive the cow away. The cow without warning butted the plaintiff, causing injuries.

In upholding the right of the plaintiff to recover, the Massachusetts court said:

"The real question on this branch of the case is whether, in the absence of proof of an extraordinary, dangerous propensity of the cow which was known or should have been known to the defendant, the plaintiff's injury was too remote from the trespass for liability for the injury to be imposed upon the defendant. It has been held * * * that recovery may be had by a person injured by the kick of a horse wrongfully in the place where the injury was caused without proof that the horse had a propensity to kick which was known or should have been known to its owner or keeper, * * *. We think that the "butting" of a cow ordinarily harmless is subject to the same principles as the kicking of a horse ordinarily harmless, and that injury caused by a cow's "butting" the owner of land on which the cow is trespassing may be found to result directly from the trespass and not to be too remote therefrom for liability for the injury to be imposed on the owner responsible for the trespass."

The foregoing is applicable to the facts of the case before us, which, we think, established a prima facie case against the owner of the offending animal, Harris Park Lakeshore, Inc.

As to the defendant Kerr, we conclude that the evidence was insufficient to show that he had such care, custody, control or management of the horse as to be responsible for its conduct or liable for damages to one injured by the animal.

Mr. Parker, president of defendant Harris Park Lakeshore, testified:

"Q. You have never authorized him or instructed him [Kerr] to do anything with reference to Smokey except to see that he got access to this hay had you? A. Correct."

The judgment in favor of the defendant Earl W. Kerr is affirmed. The judgment in favor of Harris Park Lake-

shore, Inc., is reversed and the cause remanded with directions to grant a new trial, permitting the parties to amend their pleadings as they may be advised.

MR. JUSTICE MOORE and MR. JUSTICE HALL concur.