No. 22800.

LOIS BLOSSOM BAUGHMAN, ROBERT IRVIN BAUGHMAN, THEODORE KENNETH BAUGHMAN, MILDRED BERYL BAUGHMAN WILKENSON, FREDERICK WAYNE BAUGHMAN, DOROTHY LEE BAUGHMAN, SHIRLEY ANN BAUGHMAN JONES, RUTH MARIE BAUGHMAN AND MARY ELIZABETH BAUGHMAN DARNELL, INDIVIDUALLY AND AS PARTNERS v. ALBERT L. COSLER.

(459 P.2d 294)

Decided September 15, 1969.　　Rehearing denied October 20, 1969.

536

Wormwood, Wolvington, Renner and Dosh, Paul D. Renner, for plaintiffs in error.

Haynie, Golden and Mumby, James Golden, for defendant in error.

*In Department.*

Opinion by Mr. Justice Lee.

Plaintiffs in error, Lois Blossom Baughman, Robert Irvin Baughman, Theodore Kenneth Baughman, Mildred Beryl Baughman Wilkenson, Frederick Wayne Baughman, Dorothy Lee Baughman, Shirley Ann Baughman Jones, Ruth Marie Baughman, and Mary Elizabeth Baughman Darnell, were defendants in the trial court and by this writ of error seek to reverse an adverse judgment in the amount of $52,000 entered upon a jury verdict against them in the district court of Mesa County. They will be collectively referred to as "defendants" or "Baughmans."

Defendant in error, Albert L. Cosler, was plaintiff in the trial court and will be referred to as "plaintiff" or as "Cosler."

A somewhat detailed recitation of the factual background is necessary for a full understanding of the contentions of the parties. The controversy arose out of an explosion in which Cosler was severely injured and for which he claimed damages from the Baughmans.

Defendants were the owners of a one-story brick veneer building situate on the south side of West Main

Street in Grand Junction. The components of this building consisted of five apartments, numbered from the east to the west, in the westerly half of the building, and a grocery and market in the easterly half of the building. Plaintiff was the tenant of apartment No. 4 at the time of the explosion hereinafter described.

Defendants also owned the property known as 106 South Spruce Street, which was situated around the corner south from the apartment building. This property consisted of a frame residence and side yard which abutted the apartment building site.

Defendants inherited these properties, among others, from their grandfather who had created a trust, naming the defendants as beneficiaries, and their father, Irvin Baughman, as trustee of the various trust properties. Irvin Baughman, as such trustee, was in control of the properties from July 22, 1942, until July 9, 1959, when title was conveyed to the defendants. At the time of the explosion, June 24, 1964, defendants were the record owners and Robert Irvin Baughman and Theodore Kenneth Baughman were the apartment managers under a power of attorney.

The apartment and store building had been constructed by defendants' grandfather in 1939. A butane gas system had been installed for servicing of the various units with butane fuel. This system consisted of an underground tank buried approximately three to four feet below the surface of the ground in the yard at 106 South Spruce Street, located to the south and rear of the apartment building. Mounted on top of the tank was a well or control box which was approximately twelve to fourteen inches in diameter and which extended vertically down from the surface of the ground to the top of the tank. In it were pressure and capacity gauges and control valves which regulated the flow of gas from the tank into the service lines. To manipulate the control valve required one to reach down approximately twenty-eight to thirty inches. The top of the well, or control box, was

538

covered with an unlocked metal cap, easily removable. The butane gas service line extended underground from the tank, northerly through the foundation wall into the crawl space beneath the floor of the apartment building, where it then attached to a 1¾-inch distribution pipe which ran easterly underneath the five apartment units. Off the pipe were ½-inch T's, from which ½-inch copper service lines extended upward through the floor into each apartment for connection to the appliances.

The only access to the crawl space was through a small trapdoor located in the floor of a utility room on the west end of the building. One could not see the full length of the distribution pipe, or the condition of the various T's from the trapdoor area, as the pipe passed through foundation partitions supporting the apartment units.

Defendants became the owners of the apartment building in 1959. Six years prior thereto, when natural gas had become available to the Grand Junction area, defendants' father, who was then trustee and in control of the apartments, converted the gas service from butane to natural gas. The butane pipe system was disconnected from the appliances and a new natural gas service was brought in from the attic area above the apartments. Each of the butane service line T's was disconnected and plugged, with the exception of two T's, one under apartment No. 1 and one under apartment No. 4 (Cosler's apartment). There was no explanation as to who did the actual disconnection work or why the two T's were left unplugged. The effect was that, if there was gas in the butane tank and if the control valve were open, the gas would escape through the two unplugged T's into the crawl space underneath the apartments. We note here that in the foundation wall under each of the apartments there were two vents, one on the front side and the other on the rear side, through which air might normally circulate and leaking gas be diffused.

A fireman employed by the city of Grand Junction

was assigned the duty of advising property owners how to dispose of the liquid petroleum gas remaining in abandoned systems. Among those contacted was defendants' father. One of the recommended methods of disposal was to burn off the gas and fill the tanks with water. This fireman later observed defendants' father burning off the gas from the tank in question. Defendant Robert Baughman testified it was his belief that the butane gas had been disposed of in this manner.

None of the defendants participated in any way in the work of changing the gas service from a butane to a natural gas system, nor was there any evidence whatsoever that they were aware of any of the details involved in the changeover work.

On June 24, 1964, at approximately 7:30 p.m., a violent explosion occurred which virtually demolished the building. Plaintiff was in his apartment at the time and suffered severe injuries, eventually necessitating the amputation of his left leg at the knee.

An examination of the tank capacity and pressure gauges immediately after the explosion indicated to the investigating fire chief that the tank was approximately half full of butane gas at forty pounds pressure. He found the control valve to be open approximately one-fourth of an inch and he heard intermittent hissing sounds from leaking gas. The well or control box contained sticks and debris and the gauges themselves were covered with cobwebs and dust. An odor of gas was present, both in the area of plaintiff's apartment and in the area of apartment No. 1.

An expert witness, a civil engineer specializing in gas investigations and gas systems design work, conducted a test two days after the explosion and found that when the control valve was opened gas escaped through the unplugged T's under apartments No. 1 and No. 4 (Cosler's apartment). He further testified that from the accumulated rust and corrosion the open T's

had been in that condition for at least five years, or longer.

The tenant who occupied apartment No. 5 observed that on the day of the explosion the vents on the south wall were closed, covered with pasteboard. It was his belief that the children who lived at 106 South Spruce Street had closed the vents to prevent a litter of kittens from going under the apartment building. This was not known to the Baughmans. The only evidence bearing upon this matter was from the tenant, who had observed the open vents on many occasions, but saw them to be closed on the day of the explosion.

Cosler's amended complaint alleged in essence the following: that defendants knew or should have known, by the exercise of reasonable care, of the condition of the butane tank, and its connections which were under the premises occupied by Cosler, and that, under these circumstances, the possibility existed that injury could have been inflicted upon Cosler as a tenant of the premises; that defendants were negligent in permitting the above described conditions to exist; that defendants failed to disclose the presence of the butane tank and that it was connected to the apartment defendants had rented to him; and that this negligence proximately caused the injuries and damages suffered by Cosler. Defendants denied they were negligent, alleging that at all times they acted reasonably and prudently toward Cosler; and further, that the butane gas system complained of had been abandoned during the year 1953, at which time defendants had no right, title or interest in or to the property; and also, that defendants became the owners of the property in 1959, after which they used reasonable care toward Cosler.

At the conclusion of plaintiff's evidence, the court reserved ruling on defendants' motion for dismissal until the conclusion of all of the evidence, at which time defendants moved for a directed verdict. Both motions were denied. Plaintiff then moved for a directed verdict

of liability. The court in denying this motion commented as follows:

"* * * I believe that the facts of this case delineate what is known in law as a nuisance, and that the negligence, if any, of the defendants was in the maintenance of this peculiarly dangerous instrumentality by the defendants after notice, * * *."

The pretrial order provided that the issue to be tried was that of negligence. Over the objection of defendants, the court on its own initiative instructed the jury on the theory of nuisance. The jury returned its verdict in favor of plaintiff for $52,000. Defendants' Motion for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for New Trial, was thereafter denied by the court.

▇ Defendants contend the trial court committed several prejudicial errors, among which was the failure to grant defendants' motions for dismissal and for a directed verdict. We agree for the followings reasons.

▇ As stated in plaintiff's brief, there is no substantial conflict in the evidence. Under such circumstances our duty is to determine whether, under the undisputed material facts, liability may be imposed upon the defendants. *Grand Junction v. Lashmett,* 126 Colo. 256, 247 P.2d 909. We are here concerned with a landlord's liability to his tenant for injury resulting from a latent defective condition in leased premises. This problem has heretofore been considered by this court in *Thum v. Rhodes,* 12 Colo. App. 245, 55 P. 264, and in *Girardot v. Williams,* 102 Colo. 456, 80 P.2d 433. In *Thum* this court stated:

"However, an obligation rests upon the landlord not to expose his tenant to danger from defects in the building the existence of which is known to him, but not to the tenant; and if, to his knowledge, at the time of the leasing, the condition of the building is such as to render it unsafe, it is his duty to disclose the state of the premises to the lessee, unless the lessee is himself acquainted with it. And, to charge the landlord with responsibility for his

failure to make the disclosure, it is not necessary that his knowledge should be actual. If his want of actual knowledge is simply the result of his own negligence, knowledge will, nevertheless, be imputed to him. * * *"

This rule was reaffirmed in *Girardot*, where it is stated: "Defendants are chargeable only with reasonable care and are held only to such knowledge as they actually possessed, or such as reasonable persons, from known conditions, should have possessed. [Citing cases and authority.]

▉▉ In *Davis v. Marr*, 160 Colo. 27, 413 P.2d 707, in determining a lessor's liability to a lessee for failure to repair a defective condition in leased premises, the rule set forth in Restatement (Second) of Torts § 357 was approved and adopted by this court. We now cite here, with approval, § 358 of the same work, which we believe embodies the principles of liability embraced in *Thum* and *Girardot*.

*"Undisclosed Dangerous Conditions Known to Lessor*

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

"(a) the lessee does not know or have reason to know of the condition or the risk involved, and

"(b) the lessor knows or has reason to know of the condition, and he realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."

Applying the foregoing to the undisputed facts here, we conclude defendants are not liable to plaintiff for the grievous injuries he suffered as a result of the explosion. We reach this conclusion after scrutinizing the record in search of any evidence of facts or circumstances from which the jury might infer that the defendants, or any

of them, had the requisite knowledge, actual or constructive, of the hazardous conditions existing on the premises which resulted in plaintiff's injuries. Defendants' knowledge concerning the butane system was that it had at one time been operative, that it had been abandoned and replaced by a natural gas system by their predecessors in interest, and that the gas in the old system had been burned off, rendering it innocuous. The record is devoid of any evidence that they knew, or had any reason to know of the dangerous condition — that the tank in fact contained gas; that the valve was partially open; that the gas was flowing through the abandoned service lines out of open T's into the crawl space beneath the building; or that on the day of the explosion the south foundation vents had been closed, thus causing a dangerous accumulation of explosive gas. There was nothing known to the defendants to *suggest an investigation* of the abandoned system which would have led to knowledge of the dangerous condition. *Thum v. Rhodes, supra.* Without such knowledge, actual or constructive, defendants as lessors cannot be held liable on the basis of negligence.

Nor can plaintiff — under the facts of this case — be granted relief under the theory of nuisance. As heretofore noted, the trial court, of its own motion, over the objection of defendants that the claim of nuisance had never been asserted by plaintiff as a basis of relief, instructed the jury on the law of nuisance. Without deciding whether under any circumstances it is permissible for a trial court on its own initiative to inject a new theory of liability into the trial of a case, here, in our opinion, assuming such a claim for relief based upon the theory of nuisance had been tried impliedly with the consent of the parties, the evidence presented was insufficient to support such a claim. Dean Prosser, in his authoritative work on the law of torts, states that liability for nuisance rests upon three types of conduct: first, an intentional invasion of a person's interests; second, a negligent one; or third, such conduct as is so dangerous

to life or property and so abnormal or out of place in its surroundings as to fall within the principle of strict liability. To predicate liability on intentional conduct, assumes a knowingly affirmative act on the part of the defendant. Likewise, to assert a claim for nuisance based upon strict liability, the conduct must be knowingly carried on by the defendant under circumstances involving an unreasonable risk to others, *e.g.*, blasting operations, storage of explosives, stockyards and slaughterhouse operations, etc. It is quite clear that the first and third theories of nuisance do not apply to defendants' conduct in this case. The trial court predicated the nuisance upon the alleged negligent maintenance of a dangerous condition by the lessors. Again, knowledge, actual or constructive, is an essential ingredient of liability based upon the negligent maintenance of a nuisance. *W. Prosser, Law of Torts* § 88 (3d ed.); 66 C.J.S. *Nuisances* §§ 85, 86; 39 Am. Jur. *Nuisances* §§ 33, 34, 35 and 36.

We believe the statement found in *McMillan v. Hammond*, 158 Colo. 40, 404 P.2d 549, is particularly appropriate to the matters under consideration:

" "The culpability of the actor's conduct must be judged in the light of the possibilities apparent to him at the time, and not by looking backward "with wisdom born of the event." The standard must be one of conduct rather than of consequences. It is not enough that everyone can see now that the risk was great, if it was not apparent when the conduct occurred. * * *' "

In view of the foregoing, it was the duty of the trial judge to grant defendants' motions to dismiss and for a directed verdict. Having reached this result, discussion of other alleged errors is unnecessary.

The judgment is reversed and cause remanded with instructions to vacate the judgment, and to enter judgment of dismissal in favor of defendants.

MR. JUSTICE DAY, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.