**No. 28056**

**Robert Bloxsom and Margaret Jean Bloxsom v.
San Luis Valley Crop Care, Inc.**

(596 P.2d 1189)

Decided June 25, 1979.

Gordon H. Rowe, Jr., for plaintiffs-appellees.

John S. Wilder, Elizabeth A. Conour, O. John Kuenhold, for defendant-appellant.

McClure and Jacobs, P.C., John C. McClure, for Amicus Curiae.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Defendant, San Luis Crop Care, Inc. (San Luis), appealed from a judgment for $3,203.75 entered in favor of plaintiffs, Robert Bloxsom and Margaret Jean Bloxsom (Bloxsom), for damages to Bloxsom's alfalfa crop. Trial was to the court. The plaintiffs alleged, and the trial court found, that the damage was caused by San Luis' negligent aerial

application of herbicides to an adjacent farm. We affirm.

## I.

### The Facts

G. E. Morgan[1] and Bloxsom cultivated adjacent farms in Rio Grande County. Morgan's farm is located north of Bloxsom's. In 1974, Morgan raised 100 acres of barley on a southern portion of his farm; Bloxsom raised 35 acres of alfalfa on a parcel of land just south of where Morgan planted his barley. The two fields were separated only by a fence and an irrigation ditch.

Morgan hired San Luis to aerially spray his barley field with a chemical herbicide. Morgan supplied a herbicide which he believed was "Weedon." San Luis supplied a herbicide known as "2, 4-D," which has a low toxicity with regard to plants, such as barley, which are members of the grass family. It has a devastating effect on broad-leafed plants and is, thus, useful for weed control in fields where grasses are planted. Unfortunately, its effect on beneficial broad-leafed plants, such as alfalfa, is equally devastating.

On the morning of June 17, 1974, San Luis sprayed the herbicides on Morgan's barley crop from an airplane and utilized procedures to protect the adjoining properties. Fires were built around the barley field to create smoke from which the direction and velocity of the wind could be determined. Flagmen were stationed on the ground to inform the pilot of the airplane whether conditions were propitious for spraying, or required that the spraying operation be aborted. The entire field was sprayed with the herbicides without incident or interruption.

Bloxsom was in his field during the spraying. He smelled a strong chemical odor which his experience led him to believe was that of a herbicide. During the day, he noticed that the tips of his alfalfa plants were drooping. By the following morning, June 18, it became apparent that the alfalfa field, as well as the trees and bushes around Bloxsom's home, had suffered extensive damage from some cause.

In the evening of June 18, Vernon McCallister, the owner-operator of San Luis and the pilot of the plane which had sprayed Morgan's barley, went to the Bloxsom farm. McCallister inspected the alfalfa crop, and the trial court found that he told Bloxsom:
"I don't see how [the herbicides] got over here. I don't see how it got this far, but it sure did. . . . Whenever you figure up the damages, you send them to me."

Expert testimony produced at trial indicated that after Morgan's barley field was sprayed, Bloxsom's alfalfa crop became twisted, snarled, and

---

[1] The trial court dismissed plaintiffs' claim for relief against Morgan, and that dismissal is not challenged on appeal.

malformed and that the damage had probably resulted from the application of some type of herbicide. Other farmers from the area testified that the damage suffered by Bloxsom's alfalfa was consistent with that caused by herbicides. These farmers also testified that their alfalfa crops grew normally during the 1974 season.

Finally, the trial court found that Bloxsom's alfalfa crop had suffered some damage from a late frost in late May and early June 1974, and that Bloxsom had turned a number of sheep into the alfalfa field to eat the tips of the alfalfa plants affected by the frost. The trial court also noted that Bloxsom had sprayed his own adjacent fields with chemical compounds in June of 1974, but found that Bloxsom's spraying was not the cause of the damage to the alfalfa crop.

## II.

### Res Ipsa Loquitur

■ The trial court applied the doctrine of *res ipsa loquitur* the facts of this case. *Branco Eastern Co. v. Leffler,* 173 Colo. 428, 482 P.2d 364 (1971); *Weiss v. Axler,* 137 Colo. 544, 328 P.2d 88 (1958). We listed the essential elements of *res ipsa loquitur* in *Branco Eastern Co. v. Leffler, supra:*

"1. 'The event is the kind which ordinarily does not occur in the absence of negligence.

"2. 'Other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence.

"3. 'The indicated negligence is within the scope of the defendant's duty to the plaintiff.' *Restatement of Torts,* 2d § 328D." and

"4. 'The plaintiffs are free from any contributory negligence or other responsibilities. *Prosser, Law of Torts* (2d Ed.) §42, at 199."[2]

■ The trial court's findings brought plaintiffs' claim for relief against San Luis within the proper scope of the *res ipsa loquitur* doctrine. It appears that the sudden unexplained damage to Bloxsom's alfalfa would not have ordinarily occurred in the absence of negligence, especially in light of testimony that other alfalfa crops in the vicinity grew normally in the summer of 1974. The trial court rules that San Luis "did not use due care and caution in the application" of the herbicides. The trial court also found that neither the late frost and subsequent grazing, nor Bloxsom's own spraying, caused the damage. We cannot say that the trial court's findings are "so clearly erroneous as not to find support in the record." *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). The defendant's duty to spray herbicides in a careful manner is unquestioned. Thus,

---

[2] We express no opinion as to whether the fourth element set forth in *Branco Eastern Co. v. Leffler, supra,* has been modified by enactment of Colorado's comparative negligence statute, section 13-21-111, C.R.S. 1973. *See, e.g., Gordon v. Westinghouse,* 42 Colo. App. 426, 599 P.2d 953, (1979).

"it may be inferred that [the] harm suffered by the plaintiff [was] caused by the negligence of the defendant." *Branco Eastern Co. v. Leffler, supra.*

The trial court applied the doctrine of *res ipsa loquitur* and thus determined that it was more probable than not, *see Page v. Clark, supra,* that the otherwise unexplained occurrence indicated negligence on the part of the defendant.

San Luis offered three alternative explanations for the damage to Bloxsom's crop: frost, grazing, and chemical spraying by Bloxsom. The trial court rejected each explanation. Our review of the record does not indicate that the trial court was clearly wrong. *Page v. Clark, supra.* Thus, we affirm the trial court's conclusion that San Luis was properly charged with the negligent destruction of Bloxsom's alfalfa crop.[3]

## III.

### Best Evidence Rule

■ Bloxsom attempted to establish a portion of his damages by testifying as to the amount and price of extra hay that he was forced to buy because of the loss of his alfalfa crop. San Luis objected, on the ground that the "best evidence" of the transactions to which Bloxsom testified were the checks and receipts exchanged in the sales and that Bloxsom's testimony regarding those sales was, thus, inadmissible. San Luis' interpretation of the "best evidence rule" does not reflect the effect given that rule by this court. *See Kendall v. Hargrave,* 142 Colo. 120, 349 P.2d 993 (1960); *C. McCormick, Law of Evidence* §§ 230, 233 (2d ed. 1972); 4 *J. Wigmore, Evidence,* § 1245 (Chadbourn rev. 1972). Evidence of payment is admissible without production of the accompanying documents.

■ The trial court calculated Bloxsom's damages by comparing the yield from the damaged 1974 alfalfa crop with "the average yield of the same crop on similar land in the agricultural neighborhood in the same season and locality." It concluded that Bloxsom's shortfall was 58.25 tons and that at the market price of $55 per ton prevalent in the summer of 1974, Bloxsom's damages were $3,203.75. It further found that Bloxsom would have incurred no marketing expenses in disposing of the alfalfa. The trial court employed a proper method of computing damages. *Roberts v. Lehl,* 27 Colo. App. 351, 149 P. 851 (1915). Thus, the trial court did not rely on Bloxsom's testimony as to the cost of "cover" in its computation of damages. As such, any error in its failure to sustain San Luis' objection to Bloxsom's testimony, if there was error, did not prejudice San Luis.

We have examined the other objections advanced by San Luis and find them to be without merit.

---

[3] Because of our disposition of this case, we need not reach the contention of *amicus curiae* that San Luis should be held responsible for the destruction of Bloxsom's alfalfa crop on principles of strict liability. *See Langan v. Valicopters, Inc.,* 88 Wash.2d 855, 567 P.2d 218 (1977).

Accordingly, the judgment of the trial court is affirmed.