625 F.2d 1384
 William J. HAAS, Plaintiff-Appellee,
v.
Rosella F. LAVIN, Wesley C. Lavin and Wesley C. Lavin, Jr.,
Individually; Wesley C. Lavin and Wesley C. Lavin,
Jr., as Co-Trustees, Defendants- Appellants.
 No. 78-1968.
 United States Court of Appeals,
Tenth Circuit.
 April 25, 1980.
 
 Graydon F. Dowis, Jr., Sterling, Colo. (Roger L. Nixt, Sterling, Colo., with him on the brief), for plaintiff-appellee.
 Max A. Wilson, Sterling, Colo., for defendants-appellants.
 Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is a diversity case in which we are called upon to review the sufficiency of the evidence with respect to liability and also damages. It is somewhat unusual in that it is concerned with a controversy between farmers in Logan County, Colorado. The plaintiff sought and obtained damages in a jury trial growing out of the alleged failure of defendants to properly till their farmland, as a result of which, according to further allegations, dirt and dust blew from the defendant Lavin's property to the property of Mr. and Mrs. Haas which adjoined the farm of Lavin. The legal theories employed by the plaintiff in the case are private nuisance, common-law negligence and violation of the Colorado Soil Erosion-Dust Blowing Acts of 1951 and 1954, C.R.S. §§ 35-71-101, et seq. and 35-72-101, et seq. (1973).
 
 
 2
 The plaintiff-appellee Haas is a wheat farmer in Logan County. He is a tenant on two quarter sections of land which is owned by another Haas family, John F. and Christine Haas, who also claimed damages but did not receive an award. The defendants-appellants' land is owned by Wesley C. Lavin, Rosella F. Lavin and Wesley C. Lavin, Jr. They own three quarters of wheat farmland which is adjacent to the farm of the plaintiff-appellee William J. Haas.[1] We have attached to this opinion a diagram showing the location of the Haas and Lavin properties in relation one to the other.
 
 
 3
 Diversity of citizenship exists. William Haas is a citizen of Colorado, whereas the three Lavins reside in Oklahoma. Suit was commenced in state court and was removed by the Lavins to the United States District Court. The amount of damages sought by Haas was $32,000 caused by dirt and dust blowing from the Lavin property. Plaintiff also sought exemplary damages in the amount of $10,000. The jury found for William Haas on his negligence theory and also on the basis that the condition of the Lavin farm constituted a nuisance. The jury found that the conduct of the Lavins was not intentional or malicious. They fixed the amount of Haas' damage at $9,000 and found that Haas was contributorily negligent to the extent of ten percent. This resulted in the total award being $8,100 actual damages and no punitive damages.
 
 
 4
 As noted, the question which we must take up involves sufficiency of the evidence.I.
 
 
 5
 A brief consideration of the history of the tort remedies at common law which arise from possession and use of land furnish some insight and perspective. In considering the problems that are presented here, 1 Harper & James, The Law of Torts § 1.3, commencing at page 7, points up the generally familiar fact that trespass was the "parent tort action," which commenced to be used in the middle of the thirteenth century. From the first the trespass to land writ was a remedy for an invasion of some interest in possession of land by direct force. It applied only to breaches or near breaches of the peace. It was confined also to situations in which the defendant had invaded the interest of a possessor or one entitled to immediate possession. Trespass on the case was used where the plaintiff was seeking to establish his right to possession in the future. The authors point out that although the common law forms of action have been abolished, that they continue to have substantive effect and the old distinctions generally govern in selection of applicable legal standards.
 
 
 6
 The authors emphasize that the chief characteristic of trespass was that it applied only to harms to persons or property which were immediately and directly caused by the forceable act of another. Harm was regarded as immediate when the act of the defendant itself and not a consequence of that act brought about the damage. Harper & James discuss the distinction at page 10: "The distinction between the actions of trespass vi et armis and on the case is perfectly clear," says Lord Kenyon, C. J., in Day v. Edwards.[2]
 
 
 7
 The authors summarize the relationship between the early writs and the present remedies in the following manner:
 
 
 8
 Since most wrongs arising out of negligence could more conveniently be remedied in case, * * * it has come about that the principles governing negligence are construed as applicable to negligent trespasses on land or to the person. * * *
 
 
 9
 Id. at page 11. It is also said that when the trespass is negligent rather than intentional, the present rule requires actual damages to be proven, whereas in an intentional trespass damages are presumed.
 
 
 10
 Inasmuch as the invasion here is not a direct invasion, trespass is not the appropriate action under common law. Since it is trespass on the case, it is negligence.
 
 II.
 
 11
 WAS NEGLIGENCE PROVEN?
 
 
 12
 The principal claim in the case at bar is in terms of negligence. It is based on common law and violation of the relevant statutes. The first question which is raised by the contention of the Lavins before this court is the sufficiency of the evidence to establish that there was a violation of their duty owed to Haas in terms of the facts here. Their argument is that this was a mere disagreement as to the proper way to farm; that the Lavins' use of the land was reasonable. Thus, the opposition to the plaintiff's claim is a general one which apparently recognizes that negligence is the correct legal theory.
 
 
 13
 Our first inquiry is relatively narrow. It is to what extent the occupier of land owes a duty to his neighbors to exercise reasonable care to prevent injury to adjacent property.
 
 
 14
 The Colorado Supreme Court in its decision in Moore v. Standard Paint & Glass Co., 145 Colo. 151, 358 P.2d 33, 36 (1960), has committed itself in this particular area of the law. In that case a fire had destroyed a building which was being converted to a parking lot. It had utilized a one-story basement some nine feet below street level. A cloudburst occurred and the substreet level parking area was filled with water to a level of seven or eight feet along the wall of the Standard Paint Building. The accumulation occurred during the night and presumably the water found its way to the property of Standard Paint. Damage resulted to the merchandise which was stored in the Standard Paint building. Standard's suit was against both the owner of the parking area and its lessee. As in the present case, it was alleged that Moore-Hughes, the owner of the parking lot, was guilty of negligence and had committed a nuisance. The Moore-Hughes complaint was dismissed and the judgment was in favor of Standard on the ground that Moore-Hughes was negligent in maintaining a large excavation adjacent to the plaintiff's building.
 
 
 15
 Moore-Hughes contended that an act of God had produced the damage. The court held, however, that there was ample evidence to support a determination that one of the causes of the damage to Standard was the water seepage through the wall between the parking area and Standard's basement.
 
 
 16
 The Colorado court stated the governing rule:
 
 
 17
 The occupier of land owes a duty of reasonable care to prevent activities and conditions on his land from injuring persons or property outside his land, i. e., persons or personal property on public land or on other private land, or on navigable water or in the navigable air space; or other real property.
 
 
 18
 145 Colo. at 155, 358 P.2d at 36 (2 Harper & James, The Law of Torts 1521, § 27.19). The Colorado court concluded:
 
 
 19
 Applying these rules to the instant case, we must hold that Moore-Hughes was under an affirmative duty not to permit its land to remain in an altered state if such altered state created a condition the natural and foreseeable result of which would result in injury to the adjoining property, and the breach of this duty constitutes actionable negligence.
 
 
 20
 145 Colo. at 156, 358 P.2d at 36.
 
 
 21
 A landowner does have a duty to prevent injury to a person's property which adjoins the former owner's land where the land has been altered by artificial as opposed to natural forces, for example by farming. He must have created "a condition the natural and foreseeable result of which would result in injury to the adjoining property, and the breach of this duty constitutes actionable negligence." Id. See also W. Prosser, Handbook of the Law of Torts § 57 (4th ed. 1971). The existence of a duty on the part of the Lavins to exercise reasonable care and to cultivate their farmland so as not to cause foreseeable injury to adjacent property cannot be denied.
 
 
 22
 The Lavins say that it was attributable to the difference in their farming methods. The evidence does not support such a thesis. It showed that the Lavins' efforts were deficient. Dirt was shown to have blown from the Lavin property for six weeks in the spring of 1975 and in particularly heavy quantities during the month of March. Three witnesses testified that all of the fields in that area were blowing dirt at that time, but six witnesses stated that the Lavins' fields blew worse than any others. Indeed, two of the witnesses said that the Lavins' fields were the only ones that were blowing.
 
 
 23
 The evidence further showed that William Haas, the plaintiff, together with Howard Hoxie, another farmer, called Wesley Lavin, who was then in Oklahoma, to complain about the blowing dirt. Lavin had planted his winter wheat crop during the first weeks of October 1975. It was customary in that part of Colorado to plant wheat earlier: from the last week of August to the middle of September so as to allow the wheat ample time to sprout and provide a ground cover before the winter freeze. Unlike the wheat crops of the other farmers in the area, Lavin's crop which was seeded in the fall of 1974 never sprouted. Several of the farmers testified that the Lavin fields were in poor condition at the time the fall wheat was planted and that there were too many weeds which had leached the moisture from the soil. As a result, the land was dry, pulverized and powdery in contrast to the moist condition of neighboring fields.
 
 
 24
 One witness, Albert Klinzmann, a local farmer, stated that the dry, powdery condition of the Lavin fields was due to an excessive use of an offset disc, which had the effect of pulverizing the soil after the weeds had drained the soil of its moisture. His further testimony dealt with the importance of using the disc only one time with a view to preventing breakup of the surface clods which protect the soil from blowing.
 
 
 25
 All of the evidence justified the jury's conclusion that the Lavin property was not prepared in a manner which would forestall blowing dirt and soil erosion.
 
 
 26
 It is not necessary to look to the common law alone for a duty to protect the land of a neighbor. Colorado has enacted statutes which impose a duty on the owner of real property to prevent dust blowing from his property by planting certain grasses, shrubs, trees or annual or biennial crops or by cultivation in order to prevent or minimize erosion of the soil and dust blowing.
 
 
 27
 The first of the statutes, the Colorado Soil Erosion-Dust Blowing Act of 1951, provides:
 
 
 28
 Duty of Landowner. To conserve the natural resources of the state and to prevent the injurious effects of dust storms, it is the duty of the owner of real property in this state to prevent dust blowing therefrom, as nearly as can be done, by planting perennial grasses, shrubs, or trees or annual or biennial crops or by cultivation at such times and in such manner as will prevent or minimize erosion of the soil and dust blowing therefrom.
 
 
 29
 C.R.S. § 35-71-102 (1973).
 
 The later Act of 1954 provides:
 
 30
 Duty of Landowner. To conserve property and the natural resources of the State, and to prevent the injurious effects of dust storms, it is the duty of the owner of real property in this state to prevent dust blowing therefrom, as nearly as can be done, by planting perennial grasses, shrubs, or trees, or annual or biennial crops, and by treatment consisting of listing, chiseling, and similar practices at such times and in such manner as will prevent or minimize erosion of the soil and dust blowing therefrom.
 
 
 31
 C.R.S. § 35-72-102 (1973). The Board of County Commissioners of any Colorado county, on receipt of a complaint that soil is blowing from any land within the county, is authorized to inspect the property and order the owner to treat the land to control erosion. The Board is given authority, in addition, to carry out erosion control measures itself, and to assess the property owner for expenses. C.R.S. §§ 35-71-103-105, 35-72-102-105 (1973).
 
 
 32
 At the times in question, one of the County Commissioners testified that he received three complaints that dirt was blowing from the Lavin property in 1975. It is significant that no complaint was received about any land other than the Lavins'. In response to the complaint, the property was inspected, and Wesley Lavin was ordered to take specified corrective measures. These were contained in three notices, dated May 7, 1975, November 12, 1975, and January 7, 1976.
 
 
 33
 The Lavins argue that they complied fully with the Commissioner's orders. In so arguing they misinterpret the significance of the orders. This evidence does not help them. Instead, it is an admission that they had violated the acts. So, therefore, the plaintiffs have suffered an injury which is the proximate result of a duty imposed by statute for the protection of plaintiff and others similarly situated. The violation of such a statute proves that there was a violation of a duty owed to the plaintiff to protect his property from injury. See Hamilton v. Gravinsky, 28 Colo.App. 408, 474 P.2d 185, 186-87 (1970), modified on other grounds, 174 Colo. 206, 483 P.2d 385 (1971). See also W. Prosser, Handbook of the Law of Torts § 36 (4th ed. 1971). It cannot be denied that Haas was protected by the statutes. Also, as we demonstrated above, the evidence in support of the violation and of the injury was sufficient.
 
 III.
 
 34
 WHETHER THE ALLEGATION OF NUISANCE WAS SUPPORTED
 
 
 35
 The alternative nuisance count does not supplement the negligence. It supports it. There can be, after all, only one recovery, but insofar as it constitutes an alternative theory of recovery it should be considered. It is coterminous with the claim based on negligence because nuisance may be based either on negligence, intentional conduct or liability without fault. Nuisance is a result rather than a theory of recovery, although it is sometimes convenient to describe an injury as a private nuisance when in doing so you are ordinarily speaking of the event:
 
 
 36
 In a private nuisance action, the plaintiff must establish that the defendant unreasonably interfered with the use and enjoyment of his property. Miller v. Carnation Co., 33 Colo.App. 62, 516 P.2d 661 (1973). Additionally, the interference which occurs must be substantial in nature in that it would be offensive or cause inconvenience or annoyance to a reasonable person in the community. Northwest Water Corp. v. Pennetta, 29 Colo.App. 1, 479 P.2d 398 (1970). Liability for nuisance may rest upon any one of three types of conduct: an intentional invasion of a person's interest; a negligent invasion of a person's interest; or, conduct so dangerous to life or property and so abnormal or out-of-place in its surroundings as to fall within the principles of strict liability. Baughman v. Cosler, 169 Colo. 534, 459 P.2d 294 (1969).
 
 
 37
 Lowder v. Tina Marie Homes, Inc., 601 P.2d 657, 658 (Colo.App.1979). The Lavins do not seek to establish from their evidence that the dirt which blew from their fields from their land onto the Haas' did not interfere with Haas' use of his property, or that the interference was insubstantial. Instead, the Lavins merely say that their farming methods and procedures did not create a nuisance. Needless to say, this is not a defense to a nuisance claim.
 
 
 38
 In Lowder v. Tina Marie Homes, supra, the Colorado Court of Appeals affirmed the finding of intentional private nuisance. The defendant corporation in Lowder had scraped and leveled its property with heavy equipment, and in doing so removed the vegetation, leaving the soil in a loose, sandy condition. Heavy winds then caused a substantial amount of dirt to be blown from the defendant's lot onto the plaintiff's property.
 
 
 39
 Oberst v. Mays, 148 Colo. 285, 365 P.2d 902 (1961), was a case which was predicated on the Colorado Soil Erosion-Dust Blowing Act of 1954. The Colorado Supreme Court characterized blowing dust as nuisance per se. The court said that it "was injurious to the public health and to adjacent property, and constituted a nuisance per se . . .." Id. at 905.
 
 
 40
 Here, there was ample evidence to show that the dirt which blew from the Lavins' land onto the Haas fields was in substantial quantity so as to cause actual damage to the Haas land and to curtail his use and enjoyment of the property. It also essentially destroyed his wheat crop, or most of it, and Haas was required to strip chisel his own land to prevent it from blowing also. There was also damage to the farm equipment, which was covered with dirt and was partially or totally destroyed. So, the element of nuisance is present in the case. The defendant's conduct is shown to have been carried on negligently and to have resulted in injury to the adjacent Haas property. It constituted an unreasonable and substantial interference with the Haas' use and enjoyment of the property.
 
 
 41
 Accordingly, the jury verdict was supported by the evidence.
 
 IV.
 
 42
 WAS THE EVIDENCE SUFFICIENT TO JUSTIFY THE RETURN OF THE
 
 
 43
 VERDICT OF DAMAGES WHICH THE JURY AWARDED?
 
 
 44
 The Lavins say that it was not. They say there was a failure on the part of Haas to present evidence as to value of the wheat crop as of the time of its destruction. Haas had a right to recover his actual losses which were the proximate result of the acts or omissions of the Lavins. Bruckman v. Pena, 29 Colo.App. 357, 487 P.2d 566, 568 (1971); Miller v. Carnation Co., 33 Colo.App. 62, 564 P.2d 127 (1977). See also 58 Am.Jur.2d Nuisances § 120 (1971). But the wheat crop is not the only loss that was suffered.
 
 
 45
 It is true that the value of the crops at the time of their destruction is the best way to measure the loss. However, the early Colorado case of Hoover v. Shott, 68 Colo. 385, 189 P. 848, 849 (1920), points out the difficulty in giving the value of an immature growing crop because it does not have an established market value. Hence it tends to be speculative. Also, it is subject to possible injuries. There are other ways of measuring the loss, like the year's rental value of the land, with the cost of planting and bringing forward the crop up to the time of the loss; what the crop would bring at sale; and the proof of the average yield and the market value of crops of the same kind planted and cared for in the same manner, less the cost of maturing, harvesting and marketing. The Hoover case says all of these would be satisfactory.
 
 
 46
 In Bloxsom v. San Luis Valley Crop Care, Inc., --- Colo. ----, 596 P.2d 1189 (1979), it was held that a proper method was to compare the yield from the damaged crop to "the average yield of the same crop on similar land in the agricultural neighborhood in the same season and locality." Id. at 1192. The Lavins, however, argue that the only evidence presented was the average yield without regard to the overall average yield of the county that year, and estimates of the cost made by plaintiff of planting, harvesting and marketing the crop. There is no support for this argument.
 
 
 47
 Haas offered evidence of one Maurice Schaefer who in 1975 was the executive director for Logan County of the U.S. Department of Agriculture's Agricultural Stabilization and Conservation Service. He testified regarding projected yields based on history as showing the actual damage to the Haas crop. Haas' projected yield was 26 bushels an acre. The actual yield was three bushels an acre. The total area planted was 166 acres. William Haas had a sharecropping arrangement with John F. and Christine Haas. Also, there was evidence as to the value per bushel. It was given as $3.44. William Haas received only $3.33 due to the weeds and debris. So, it was established that the loss totaled $9,898.03 less the amount received for what Haas was able to sell, or $810.54.
 
 
 48
 Haas offered other evidence as to damage, but the jury returned the verdict in the amount of $9,000, less ten percent attributable to Haas' contributory negligence. The jury verdict was fairly accurate and was supported by the evidence.
 
 
 49
 Accordingly, the judgment of the district court is affirmed.
 
 
 50
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 [1]
 Legal description of the Haas property:
 The Southwest Quarter and the Northeast Quarter of Section 9, Township 8 North, Range 53, West of the 6th Principal Meridian, Logan County, Colorado.
 Legal description of the Lavin property:
 The Southeast Quarter of Section 4, and the Southwest Quarter and the Northwest Quarter of Section 9, all in Township 8 North, Range 53, West of the 6th Principal Meridian, Logan County, Colorado.
 
 
 [2]
 The authors further bring out that
 "If the injury be committed by the immediate act complained of, the action must be trespass; if the injury be merely consequential upon that act, an action on the case is the proper remedy. In 1 Strange 636, it is said, 'If a man throw a log into the highway, and in that act hits me, I may maintain trespass, because it is an immediate wrong; but if, as it lies there, I tumble over it and receive an injury, I must bring an action upon the case.' " As the early law it was immaterial whether the invasion of land, goods or person was an intended one, or merely negligent or, in fact, purely accidental and without fault. So long as the invasion was due to any kind of volitional act on the part of the actor, there was a wrong, and if the damage was direct, trespass was the appropriate action. If, however, there was no act of volition by the actor, he was not liable, as where one is cast on another's land by third persons.
 Id. at page 10.