**L.L. HARSH, Plaintiff–Appellant,**

v.

**CURE FEEDERS, L.L.C., a Colorado limited liability company, Defendant–Appellee.**

**No. 04CA0240.**

Colorado Court of Appeals, Division V.

June 2, 2005.

Alvin R. Wall, Holyoke, Colorado, for Plaintiff–Appellant.

Roberts Levin Zboyan & Patterson, P.C., Daniel W. Patterson, Jeremy A. Sitcoff, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

Plaintiff, L.L. Harsh, appeals the trial court's judgment finding defendant, Cure Feeders, L.L.C., liable, but awarding only $150 for one day of grazing by 500 head of defendant's cattle entering upon plaintiff's land. We reverse and remand for an award for the damages to plaintiff's crops and for additional damages that arose from a fertilizer spill caused by the trespassing cattle.

Plaintiff farmed nine fields irrigated by separate center pivot sprinkler systems. The subject field comprised 165.5 acres which were planted to corn. The field was protected by an outer four-wire barbed wire fence and an inner one-wire electric fence. It is undisputed that the outer fence was a "lawful fence" within the meaning of § 35–46–102(1), C.R.S.2004.

Defendant is a feedlot operator that pastured cattle on land adjacent to the field. One July evening defendant's cattle broke through the fences, entered the field, and spread out onto unirrigated pastureland to the north and west of the center pivot sprinkler and into the irrigated corn field. It is undisputed that the cattle damaged a portion of the corn crop and a fertilizer tank adjacent to, and which dispensed fertilizer through, the center pivot sprinkler system. The damage to the tank caused approximately 1,250 gallons of liquid fertilizer to be dumped.

After the cattle were removed from plaintiff's land, defendant agreed to pay damages, but the parties could not agree on the measure or amount. Plaintiff identified and marked that portion of the field in which the corn crop was partially damaged. He continued to irrigate, fertilize, and apply chemicals to both the damaged and undamaged portions of the field in the same manner. He then harvested the two portions separately and determined the yield of each.

Plaintiff then commenced this action to recover the value of the difference in yield between the damaged and undamaged portions of the field. According to plaintiff's records, the damaged portion of the field, 91.1 acres, yielded 16,847.7 bushels of corn, or 184.94 bushels per acre. The undamaged portion of the field, 74.4 acres, yielded 17,370.28 bushels, or 233.47 bushels per acre. Based on these yields, plaintiff determined that the damaged portion would have produced 4,421 more bushels had it not been damaged and, applying the contract price of $2.28 a bushel, computed the damages at $10,080. In addition, plaintiff would have received $.40 a bushel as a loan deficiency

price under a federal program, or another $1,768.40.

Plaintiff testified that it was not possible to determine the amount of damage caused to an immature corn crop at the time of the damage. The difficulty is, in part, that the damage to the standing corn stalks does not manifest itself until the crop dries out shortly before harvest because the drying out weakens the stalk, and an otherwise healthy appearing stalk collapses from the weight of the corn and cannot be harvested. This characteristic of corn is called "green snap."

In addition, plaintiff sought damages for the lost fertilizer in the amount of $912, fertilizer cleanup in the amount $2,500, and grazing fees of $150.

The trial court found that defendant's cattle had broken plaintiff's fence and plaintiff was therefore entitled to damages. However, the court also concluded, relying on *Hoover v. Shott*, 68 Colo. 385, 189 P. 848 (1920), that plaintiff was required to produce evidence concerning the value of the immature crop and the costs involved with maturing, harvesting, and marketing such a crop. Because plaintiff failed to produce the deductible costs, the trial court ruled that plaintiff could not recover any damages relating to his crop loss. The trial court also concluded that plaintiff was not entitled to damages for the fertilizer tank, the loss of liquid fertilizer, and cleanup expenses. Thus, the trial court entered judgment in favor of plaintiff for $150 based on the cash rent for grazing 500 head of livestock for one day.

## I.

■ Plaintiff first contends that the trial court erred when it denied him an award for damage to the corn crop. We agree.

The Colorado Fence Law, § 35–46–102(1), provides in pertinent part:

Any person maintaining in good repair a lawful fence, as described in section 35–46–101, may recover damages for trespass and injury to grass, garden or vegetable products, or other crops of such person from the owner of any livestock which break through such fence. No person shall recover damages for such a trespass or injury unless at the time thereof such grass, garden or vegetable products, or crops were protected by such a lawful fence.

■ The determination of the proper measure of damages can be complicated. The general underlying principle, however, is that whoever unlawfully injures another shall make the injured person whole. *Munson v. Boettcher & Co.*, 832 P.2d 967 (Colo.App. 1991), *aff'd*, 854 P.2d 199 (Colo.1993). In addition, an injured party has the duty to take such steps as are reasonable under the circumstances to mitigate the damages sustained. Thus, the plaintiff may not recover damages for injuries that reasonably might have been avoided. *Ballow v. PHICO Ins. Co.*, 878 P.2d 672 (Colo.1994).

The trial court relied on *Hoover v. Shott*, *supra*, in which our supreme court stated:

Upon principle this would seem to be the true rule of compensation—the value of the crops at the time of their destruction .... But in order to establish the value at the time of the destruction courts are compelled to resort to several methods of computation, and either, or all combined, may afford a fair basis. One might be a year's rental value, with the cost of planting and bringing forward the crop until the time of its loss; another, what the crop would bring in its immature state at a sale; and a third, the proof of the average yield and *the market value of crops of the same kind planted and cared for in the same manner, less the cost of maturing, harvesting and marketing.*

*Hoover v. Shott, supra*, 68 Colo. at 387–88, 189 P. at 849 (quoting *Colo. Consol. Land & Water Co. v. Hartman*, 5 Colo.App. 150, 152, 38 P. 62, 63 (1894))(emphasis added).

In denying plaintiff any award for his damaged crop, the court stated, "There was no evidence of the value of the crop at the time of destruction .... There was evidence concerning the possible yield and market value of the crop, but no evidence whatsoever concerning the costs of maturing, harvesting, and marketing the crop."

The trial court's reliance was misplaced because *Hoover* involved the complete destruction of a crop. Here, we have the par-

tial destruction of a crop in a portion of a field without the possibility of replanting the same or another crop.

In our view, the correct measure of damage is that announced in *Bloxsom v. San Luis Valley Crop Care, Inc.*, 198 Colo. 113, 596 P.2d 1189 (1979). There, the neighboring farmer had his fields sprayed with a herbicide. The herbicide drifted onto the plaintiff's alfalfa crop and caused immediate damage, but did not destroy the crop. The plaintiff continued to farm the crop for the balance of the season and sought damages from the crop duster. The supreme court approved the measure of damages used by the trial court:

> The trial court calculated [the plaintiff's] damages by comparing the yield from the damaged 1974 alfalfa crop with "the average yield of the same crop on similar land in the agricultural neighborhood in the same season and locality." It concluded that [the plaintiff's] shortfall was 58.25 tons and that at the market price of $55 per ton prevalent in the summer of 1974, [the plaintiff's] damages were $3,203.75. It further found that [the plaintiff] would have incurred no marketing expenses in disposing of the alfalfa. The trial court employed a proper method of computing damages.

*Bloxsom v. San Luis Valley Crop Care, Inc.*, *supra*, 198 Colo. at 117, 596 P.2d at 1192 (citing *Roberts v. Lehl*, 27 Colo.App. 351, 149 P. 851 (1915)).

Here, because only a part of the crop in a portion of the field was damaged, plaintiff was compelled by either his obligation to mitigate damages or his farming method, or both, to continue to farm the entire field in the same manner. That is, plaintiff irrigated and fertilized the entire field through a common center pivot irrigation system. Therefore, the damaged and undamaged portions of the field were treated identically. Further, the costs of maturing, harvesting, and marketing the crop had been incurred. Although the reduced production might have reduced plaintiff's trucking expenses, we note that the contract for the sale of the crop specified that the sale was "FOB [free on board] Wray Farm Via Truck." "When the

term is F.O.B. the place of shipment, the seller [here, plaintiff] must at that place ship the goods in the manner provided in this article (section 4–2–504) and bear the expense and risk of putting them into the possession of the carrier." Section 4–2–319(1)(a), C.R.S.2004. Thus, plaintiff delivered the corn to a carrier at his farm, and the trucking or delivery was at the purchaser's expense and risk.

Here, the evidence pertinent to what we conclude is the proper measure of damages is undisputed. Therefore, we conclude that the trial court erred in failing to award plaintiff damages in accordance with the evidence presented, and on remand the court shall enter judgment in the amount of $11,849.08 plus prejudgment and postjudgment interest at the applicable statutory rate for the crop damage caused by the intrusion of defendant's livestock.

## II.

Plaintiff also contends that the trial court erred in dismissing his claim for damages arising from the loss of the fertilizer and the costs of the cleanup following that loss. Again, we agree.

At the close of plaintiff's case, the trial court granted defendant's motion to dismiss plaintiff's claim for damages for the loss of the fertilizer and the resultant cleanup. The trial court relied on *Mountain States Telephone & Telegraph Co. v. Horn Tower Construction Co.*, 147 Colo. 166, 363 P.2d 175 (1961). In *Mountain States*, a grading contractor accidentally severed a buried telephone cable installed in a public right-of-way, even though both the contractor and the telephone company went to great lengths to locate the cable to avoid damage. There was no trespass to land by either party; both had the right to be there. The phone company sued for trespass to chattels, which required proof of the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification. The supreme court affirmed a defense verdict on the basis that there was no evidence that the contractor was reckless or

wanton. In our view, the trial court's reliance on this case was misplaced.

Our supreme court limited the application of the fence law to crop damages in *Robinson v. Kerr*, 144 Colo. 48, 355 P.2d 117 (1960). In *Robinson*, a child was kicked in the face by a horse which had trespassed on land enclosed by a lawful fence. The trial court dismissed the plaintiff's case on two bases, one being the fence law. The supreme court stated, in pertinent part:

> In answer to [the defendant's] contention it need only be said that Colorado in adopting the fence law ... modified the common law only to the extent embraced in the statute, which may not be enlarged by construction, nor its application extended beyond its specific terms.
>
> "Statutes are not presumed to alter the common law otherwise than the act expressly provides." *In re Reynolds' Guardianship*, 60 Cal.App.2d 669, 141 P.2d 498, 500.
>
> The common law being the rule of decision in this state, it would seem to follow that the so-called 'Fence Law' has no application to an action for personal injuries inflicted by trespassing animals. That act at most provides a defense to an owner of trespassing livestock in those circumstances where the claimant is unable to show that his land was enclosed by a fence of sufficient strength to turn ordinary cattle, and by its terms is limited to damages to grass, vegetables and other crops caused by the trespassing livestock.

*Robinson v. Kerr, supra,* 144 Colo. at 52, 355 P.2d at 119–20.

The rationale of *Robinson* applies equally here. Accordingly, the trial court erred in dismissing plaintiff's claim for damages arising from the fertilizer spill. Again, here, only liability was contested, and the evidence of damages caused by the spill of the fertilizer was undisputed. Therefore, on remand the trial court shall enter judgment for plaintiff in the amount $3,412 plus prejudgment and postjudgment interest at the applicable statutory rate and costs.

Accordingly, the judgment is reversed, and the case is remanded to the trial court for entry of judgment for plaintiff in the amount of $15,411.08 plus interest and costs.

Judge NIETO and Judge DAILEY concur.